[L. A. No. 238.    Department One.—November 24, 1897.]

M. HERZOG, Appellant, v. J. S. PURDY, Respondent.

SALE—SEVERABLE CONTRACT—DIFFERENT ITEMS—ACCEPTANCE.—A contract for the sale of different kinds of personal property, at an agreed price for the different items, is severable, in the absence of any thing in the contract to show that the sale of one item was contingent upon the sale of the others, or that the contract was for any other reason an entirety; and the refusal of the purchaser to accept a tender of one of the items does not operate to waive or excuse performance, or offer of performance, by the seller as to the other items.

ID.—RESALE BY SELLER—PERFORMANCE.—Upon the refusal of the purchaser to accept a tender as to one of the items, a resale by the seller of all the property incapacitates him from any performance whatever, and releases the purchaser from the necessity of further demand or tender of performance as to the other items, and as to them subjects the seller to liability.

ID.—PART PAYMENT—FORFEITURE.—Where, at the time of the execution of such contract, the buyer made a payment which the seller receipted for "on account," the subsequent refusal of the buyer to accept one of the items does not work a forfeiture of the payment, but it is his right to have it applied on the price of any of the items which he accepted.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order refusing a new trial. John L. Campbell, Judge.

The facts are stated in the opinion.

Paris & Allison, for Appellant.

Eggers & Allen, for Respondent.

BRITT, C.—On April 11, 1895, the parties entered into a contract whereby plaintiff agreed to buy and defendant agreed to sell certain salt hides, calfskins, pelts, and tallow of animals previously slaughtered, and thereafter, during said month of April, to be slaughtered by defendant in the course of his business of butcher. Plaintiff then paid to defendant the sum of two hundred dollars, and took the following receipt: "Received from M. Herzog two hundred dollars on account. All hides and pelts, April killing, to be delivered on or about May 1, 1895. J. S. Purdy." By the terms of the contract the hides were to be paid for at four and one-eighth cents per pound; calfskins at thirty-five cents each; pelts (of sheep, it seems) at four cents per pound; tallow at three and one-eighth cents per pound. This is an action for damages for alleged breach of the contract by defendant in failing to deliver the goods. Verdict and judgment were for defendant.

At the trial there was evidence that defendant carried on his business at the town of San Bernardino, where the contract was made; that plaintiff resided elsewhere, and that, to obviate the necessity of plaintiff's coming again to San Bernardino, it was agreed that one Rittler should in his behalf receive, pay for, and ship the goods. On April 28th, defendant notified Rittler that the hides would be ready for delivery at 9 o'clock in the forenoon of April 30th, and accordingly the latter attended at defendant's slaughterhouse at the time appointed. The evidence was quite conflicting as to what occurred there; the testimony for defendant tended to show that Rittler objected to the condition of the salted hides and said he could not receive them, but would telegraph Herzog, the plaintiff, to come at once himself; also, that Rittler's objections to the hides were not well founded. Defendant said to him: "Herzog appointed you his agent to receive these hides and they are shrinking every day they are here, and you have to take them now or I will sell them to somebody else." Rittler refused. Both he and defendant

forthwith sent telegraphic messages—Rittler summoning Herzog, defendant notifying a buyer of such commodities at Los Angeles that his hides were for sale. On the morning of May 1st the latter arrived, and defendant sold the hides to him; he sold also, to the same party it seems, the other property he had previously bargained to plaintiff. Herzog arrived in San Bernardino in the afternoon of May 1st, and, being unable to find the defendant, announced at his shop that he was ready to receive the goods he had bought; on May 2d he repeated the offer to defendant personally, and was informed that they had been sold. There was evidence tending to show that on April 30th defendant had on hand within the purview of the contract eight thousand five hundred and thirty-four pounds of salted hides, five thousand four hundred and eighty-four pounds of tallow, and a considerable number of pelts and calfskins. On said April 30th the market price of hides had advanced materially since April 11th, the date of the contract of sale. Defendant retained the payment of two hundred dollars he had received, claiming that it was forfeited to him.

Admitting that Rittler's conduct might rightly be treated by the defendant as a positive and final refusal of such of the goods as the defendant offered to deliver—and that it was not rather an attempt to defer acceptance until, within the period fixed for delivery, Herzog might exercise his personal judgment in the matter—still the evidence in the record fails to sustain the verdict. It has been seen that the prices to be paid by plaintiff were expressly apportioned to the several items of the property, so much per pound for hides, so much for tallow, etc; such a contract of sale the law regards in general as severable, and we discover no evidence here to take the case out of the rule—nothing to show that the sale of one item was contingent upon the sale of the others, or that the contract was for other reason an entirety. (*Norris v. Harris*, 15 Cal. 256, 257; *More v. Bonnet*, 40 Cal. 251; 6 Am. Rep. 621; 2 Parsons on Contracts, 8th ed., 633-37.) Now, the whole transaction between Rittler and defendant on April 30th had reference to salt hides only; there is no evidence that defendant ever offered or proposed to deliver any part of the property he had bargained to plaintiff except such hides. Counsel invoke for defendant's excuse in

this behalf section 2076 of the Code of Civil Procedure. That section requires the person to whom a tender is made to specify at the time any objection he has to the amount or kind of property tendered, or be precluded from objecting afterward. But while the ground stated by Rittler may have been a waiver of other objections for defect of quality or quantity of the salt hides, it could not operate to waive performance, or offer of performance, of other and independent provisions of defendant's agreement. Suppose Rittler had accepted, paid for, and taken away the salt hides—nothing being said as to the tallow, etc.— thus giving the fullest possible effect to the defendant's tender, this procedure would certainly have been neither fulfillment nor waiver of the agreement for the purchase and sale of the other articles undelivered. We are also referred to the provision of section 1511 of the Civil Code, that the want of an offer of performance is excused when the debtor is induced not to make it by any act of the creditor intended or naturally tending to have that effect, done at or before the time at which such offer may be made and not rescinded before that time. But, in a case like the present at least, the conduct relied on as a waiver of tender should be tantamount to an explicit and positive refusal to receive (*Hansen v. Slaven*, 98 Cal. 377, 382); and the contract being severable, it is impossible that the refusal of the salt hides could be a refusal of the other things; the rejection of the former was no renunciation of the right to receive the latter. (*Morgan v. McKee*, 77 Pa. St. 228; *Young etc. Mfg. Co. v. Wakefield*, 121 Mass. 91.)

The whole case tends to show that defendant was ready and willing, prompt and eager, not to perform the contract on his own part, but to take advantage of a slip of the plaintiff, and avoid performance. Having chosen to proceed himself as the actor, and to resell all the property and convert the money paid by plaintiff, the defendant was as much bound to first offer performance of all the concurrent conditions imposed on him by the contract as if he had prepared to bring an action thereon. Proceeding without this precaution, and having incapacitated himself by resale of all the goods from any performance whatever, he released the plaintiff from the necessity of further demand or tender (Benjamin on Sales, sec. 567) and became liable to

plaintiff in this action.   He would have the right to counter-claim for damages he sustained from the wrongful refusal of plaintiff to accept the salt hides, if such he could prove; but since it appears that he sold those for a sum considerably greater than the price plaintiff agreed to pay, the question of plaintiff's default in that particular can hardly arise on a new trial, except as matter purely defensive against the plaintiff's claim for damage as to that item.

The court instructed the jury: "That if plaintiff and defendant entered into a contract for the purchase and sale of specific personal property, and the plaintiff thereafter refused to accept the goods, or property, and so informed the defendant, defendant had a right to regard said contract abandoned by plaintiff; and if plaintiff, at the making said contract, made a payment in money to defendant as forfeit money to bind the bargain and to act in good faith with defendant, then, and in that event, defendant could retain said money."   The instruction was erroneous as applied to the facts, in that it ignored the severable character of the contract, and in that it confounded matters which have no necessary identity, viz., money paid as a forfeit, and money paid to bind a bargain, that is "earnest money." (*Howe v. Hayward,* 108 Mass. 54; 11 Am. Rep. 306.)   If the money was deposited as a forfeit (though the evidence to support this view was very slight) then the condition thereof never occurred, for the defendant has not done "everything he was bound to do to entitle him to insist on the forfeiture." (*Carpenter v. Blandford,* 8 Barn. & C. 575.)   If, as seems more probable, the payment was by way of earnest and to bind the bargain, then it was part payment of the contract price, and it was plaintiff's right to have it applied on the price of any of the goods which he might have accepted.   We do not at all controvert the rule that a buyer who wrongfully abandons his contract cannot recover payments he has made on account, but the present record discloses no case for its application.   The judgment and order denying a new trial should be reversed.

Searls, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are reversed.

                              Van Fleet, J., Garoutte, J., Harrison, J.