| 96 | 510 |
| 97 | 814 |

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## ROANOKE STREET RAILWAY CO. AND OTHERS *v.* HICKS, TRUSTEE, AND OTHERS.

### DECEMBER 1, 1898. ·

Absent, Riely, J.

1. CHANCERY PLEADING—*Discovery—Corporations—Who must be Parties— Complete Relief.*—If ·a party is properly before a court of equity for a. discovery, the court, having possession of the subject, will proceed to decide the case, unless the discovery is sought and obtained to be used in a court of law. But some one must be made a defendant who can answer under oath. A corporation answers under its corporate seal, and if it is the sole defendant to a bill for discovery only, the bill will be dismissed. The usual and proper method is to make some officer of the corporation who knows the facts sought to be elicited a co-defendant with the corporation.

2. CHANCERY PRACTICE—*Specific Performance—Impossibility of Perform- ance.*—A bill in equity will not lie to compel the delivery of bonds. secured by one mortgage when the contract set out in the bill and sought to be enforced shows that the bonds contracted for were secured by a prior mortgage which has been cancelled, and that the bonds secured thereby have been destroyed, thus rendering specific perform- ance impossible.

3. CHANCERY PRACTICE—*Administration of Trust—Recitals in Mortgage or Deed of Trust to Secure Bonds.*—A recital in a deed of trust or mort- gage to secure an issue of bonds by a corporation that the money derived from the sale of the bonds is to be used to pay the debts of the corporation creates no trust in favor of any creditor of the corporation either to deliver any of the bonds or to pay over the proceeds thereof to him. Nor does the stipulation of the mortgagee or trustee to deliver a certain number of said bonds to the corporation "to be applied to the payment of its outstanding indebtedness, and to such other uses as the Board of Directors shall determine," create any trust in the corporation which it can be called upon to administer in a court of equity.

Appeal from two decrees of the Circuit Court of the city of Roanoke, one pronounced February 16, 1898, in a suit in chancery wherein the appellees, R. R. Hicks, trustee, and M. M. Rogers, were the complainants, and the appellant and another were the defendants, and the other pronounced February 17, 1898, in an ancillary suit in chancery for the appointment of a receiver and the enforcement of liens, wherein the appellee, R. R. Hicks, trustee, was the complainant, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*Watts, Robertson & Robertson, Richard M. Venable* and *S. Hamilton Graves,* for the appellant.

*Scott & Staples* and *Eppa Hunton, Jr.,* for the appellees.

HARRISON, J., delivered the opinion of the court.

In the view taken of this case the only point that need be considered is raised by the demurrer, which calls in question the right of appellee to maintain his suit in a court of equity.

The material allegations of the bill are that the appellee Rogers, in the year 1889, sold and conveyed to the appellant a tract of land, for which he was to receive from appellant certain stock, and "$40,000 worth" of its first mortgage bonds, then secured upon the property of appellant; that he has never received these bonds, and that they have been cancelled and retired; that subsequently, on the 1st day of May, 1892, the appellant executed another mortgage conveying all of its property to the Fidelity Insurance, Trust, and Safe Deposit Company of Philadelphia, as trustee, to secure $500,000 of its bonds to be issued according to the provisions of said mortgage; that there was a large indebtedness on the part of appellant which was to be provided for by this mortgage and the issue of bonds thereunder, and that a part of the indebtedness

to be thus provided for was the obligation of appellant to de-
liver " $40,000 worth " of its first mortgage bonds to appellee;
that a large part of said bonds had never been issued, and
that a large part of those issued had not been sold, but had
been deposited as collateral by appellant to secure its obliga-
tions to certain of its stockholders; that at the time of the
execution of this mortgage, the Fidelity Company, and the
stockholders for whose security bonds had been deposited as
collateral, employed counsel to examine the books, papers, and
documents of appellant and became thereby fully apprised of
the contract under which appellee had conveyed the tract of
land, and of the obligation of appellant to deliver the " $40,000
worth " of bonds as the consideration therefor, and were fully
apprised of the fact that said bonds had not been delivered,
and that appellant was still obliged to deliver the same when-
ever demand should be made therefor; that, by said last-
mentioned mortgage, distinct provision was made for the pay-
ment and discharge of all of the obligations of appellant, and
that the $500,000 of mortgage bonds so provided to be issued
were by the terms of the mortgage created a trust fund, to be
held by the Fidelity Insurance and Safe Deposit Company in
trust for the benefit of all parties to whom appellant was in-
debted or under any contractual obligations; and that it
thereby became the duty of appellant to execute and deliver to
the Fidelity Company, trustee, " $40,000 worth " of said mort-
gage bonds, and that it was the duty of the Fidelity Company
to deliver said bonds to appellee; that, on the 28th day of
March, 1894, appellee, through his trustee, to whom he had
made an assignment, had made application to appellant for the
issue and delivery of said bonds, and that it had declined to
deliver the same; that inasmuch as appellant had by its mort-
gage deed of 1892 created its mortgage bonds to the amount
of $500,000 as a trust fund for the protection of all parties to
whom it was under obligation, and among others for the
protection of appellee, therefore appellee was entitled to

compel appellant, and the Fidelity Insurance, Trust, and Safe
Deposit Company to execute and deliver to his trustee, to
whom he had made said assignment for the benefit of his
creditors, and thereafter for his own benefit, said "$40,000
worth" of bonds.

The bill then proceeds to propound certain interrogations to
appellant:

(1.) Whether appellant had ever delivered to appellee or his
trustee the "$40,000 worth" of bonds.

(2.) How much of the $500,000 of bonds provided for in the
mortgage of 1892 have been issued, how many are in the hands
of the Fidelity Company, and how many of those issued does
appellant still retain an interest in.

(3.) Whether or not any of the bonds had been delivered to
stockholders or other persons as collateral security for moneys
advanced appellant, how much money had been realized by
appellant on said bonds, and in whose hands and to whom
were said bonds delivered.

The prayer of the bill is that the appellant Railway Com-
pany and the Fidelity Company, trustee, be required to issue
and deliver "$40,000 worth" of the bonds of 1892 with inter-
est coupons attached thereto, and that appellant be required to
pay the interest, at the rate of six *per cent.*, that has accrued
since the date of the sale of the land to appellant; and that all
necessary steps be taken to give appellee complete relief ac-
cording to the statement of his case in the bill, and such general
relief as he might be entitled to.

Three grounds are urged in support of the equity of this bill
which will be considered in the following order.

First, that it is a bill for discovery, and that when a court of
equity takes possession of the suit upon this rightful ground of
jurisdiction, it will proceed to dispose of the case on its merits.

It is true that if a party is properly in equity for a discovery,
the court, having possession of the subject, will proceed to de-
cide the case without turning the party round to a court of

law, unless indeed the discovery was sought and obtained in order to be used in a pending common law action. *Lyons* v. *Miller*, 6 Gratt. 427.

Without discussing other imperfections in this, as a bill for discovery, it is sufficient to say that it cannot be maintained as such, for the reason that no one is made a party defendant who can answer under oath. There are but two parties defendant, and each is a corporation. The object of a bill of discovery in equity is to enable one party to search the conscience of his antagonist, and to compel him to make disclosures upon oath of facts necessary to the preservation of the rights of the former, which he otherwise might not be able to prove. Corporations cannot answer under oath, but only under their common seal, and for this reason, in order to prevent a failure of justice, it has long been the settled law in this country and in England, when a discovery is desired, to make such of the officers or individual corporators as are supposed to be personally cognizant of the facts wanted, parties defendant along with the company itself. The convenience of this practice has made its adoption a necessity notwithstanding the general rule in equity, that a mere witness shall not be made defendant to a bill. 1 Minor's Inst., pp. 642-3; Thompson on Corp., sec. 7409, &c., and cases there cited.

The second ground urged in support of the equity of the bill is that it seeks to enforce the specific performance of the contract of appellant to deliver to appellee " $40,000 worth " of its first mortgage bonds. This contention is wholly untenable.

The bill on its face declares that the contract to deliver the bonds was dated in 1889, and that the bonds to be delivered were at that time secured on the property of appellant by mortgage deed. If the right to specific performance exists, it is the right to demand the bonds secured by the mortgage of 1889, and yet the bill and exhibits filed therewith show that this mortgage and the bonds secured thereby have been can-

celled and destroyed, thus making it impossible to specifically execute the alleged contract.

The third ground urged in support of the jurisdiction of the court is that the bill sets out facts which show that there is, or at least should be, in the hands of appellant, a trust fund in which appellee is entitled to participate, and that equity will take jurisdiction to ascertain what that fund is, where it is, and to have it administered.

The mortage of 1892 which the bill undertakes to interpret as creating a trust fund, for the benefit of appellee, is filed with the bill and made a part thereof. It begins by reciting the right of appellant, under its charter, to borrow money for the use of the corporation, and to secure such loans on its property. It recites the fact that appellant had acquired all of the bonds secured under the mortgage of 1889, and had cancelled the same, and secured from the trustee named in that mortgage a release of the same of record. It recites that the stockholders had unanimously resolved that the appellant company should issue $500,000 of new bonds, and secure the same by mortgage or deed of trust upon its property. It then proceeds to convey all of appellant's property to the Fidelity Insurance, Trust, and Safe Deposit Company, in trust for the equal *pro rata* benefit and security of the several persons or corporations who may be, or shall become holders of any of the bonds issued thereunder. The language in the mortgage relied on in part as creating the bonds a trust fund, is found in the resolution of the stockholders authorizing the mortgage, and is as follows:

" Whereas, it is further deemed expedient and for the best interest of this company that another mortgage or deed of trust should be executed, and new bonds issued for the sum of $500,000, the money derived from the sale of said bonds to be used for the payment of the outstanding indebtedness of the company, and for betterments and improvements, for the further extension and improvement of its railroad system, the introduction of electricity as a motive power, and for the more efficient operation of the same."

This language sets forth the necessity for creating the mortgage, and explains the purpose of issuing the bonds, but it creates no trust to deliver any of these bonds to any creditor of appellant, or to sell the bonds and pay the proceeds to any creditor. A debtor may borrow money upon his property for the purpose of paying his general debts, but he does not thereby create a trust fund and constitute himself a trustee who can be impleaded by such creditors in a court of equity and made to account to them for the money so borrowed.

Language further relied on as creating a trust fund is the provision in a subsequent portion of the mortgage that the trustee named in the deed shall certify and deliver $200,000 of the bonds to appellant, " to be applied to the payment of the present outstanding indebtedness, and to such other uses as the Board of Directors shall determine." What has been said in respect to the resolution of the stockholders is equally applicable to the language here relied on. The trustee is thereby charged with the duty of certifying and delivering to the debtor $200,000 of the bonds, but appellant took the same subject to no trust that it can be called upon to administer in a court of equity.

This deed of trust or mortgage is in the usual form for such purposes. The only trust created or intended to be created thereby is carefully defined. The property is conveyed to the trustee named to be held by him in trust and confidence for the equal *pro rata* benefit and security of the several persons and corporations then holding, or who may become holders of any of the $500,000 of bonds issued thereunder. The deed does not secure, and was not intended to secure or create a trust fund for the benefit of the creditors of appellant. Its indebtedness, together with .the necessity for improving and enlarging its business, is only referred to as a reason for creating the mortgage and issuing the $500,000 bonds thereunder.

The appellee conveyed the land in question to appellant

without reserving any lien to secure the consideration therefor, and if he has any valid claim against appellant, as to which no opinion is expressed, his remedy is a plain and adequate one at law for damages.

For these reasons, the decree complained of must be reversed, the demurrer sustained, and the bill dismissed.

*Reversed.*