[S. F. No. 3790. In Bank.—March 13, 1908.]

TERESA BELL, Administratrix of Estate of Thomas Bell, Deceased, Appellant, v. BANK OF CALIFORNIA, Respondent.

PLEDGES—INSUFFICIENT COMPLAINT FOR REDEMPTION.—A complaint for redemption of property pledged which shows on its face that the property has passed out of the possession and control of the pledgor, and that it has not the ability to perform the contract of pledge or to comply with a decree for specific performance thereof, and which does not allege that defendant has other sufficient shares of pledged stock in its possession out of which performance might be adjudged, and does not allege a tender of the amount secured by the pledge, or any offer to perform the contract on plaintiff's part, the precise amount of which is shown in the complaint, fails to state a cause of action for redemption.

ID.—CAUSE OF ACTION FOR CLAIM AND DELIVERY NOT STATED.—The complaint is insufficient to state a cause of action in claim and delivery where it does not seek the recovery of specific certificates of stock; nor will claim and delivery lie for shares of stock merely as intangible property.

ID.—CAUSE OF ACTION FOR DAMAGES FOR CONVERSION—STATUTE OF LIMITATIONS.—If the complaint be regarded as setting forth a cause of action for damages for the conversion of pledged property, or for an excess in value of the pledged property over the amount of the debt, either of such causes of action arose upon the transfer of the securities by the defendant, and when the complaint was

filed, more than three years after such transfer, either of such causes of action is barred by subdivision 3 of section 338 of the Civil Code.

ID.—PRAYER FOR ACCOUNTING OF VALUE OF PLEDGED PROPERTY IMMATERIAL.—The prayer for an accounting of the value of the pledged property is immaterial to either cause alleged. The cause of action, whether legal or equitable, is determined by the sufficiency of the allegations of the complaint. Any accounting, if had, would be merely incidental to a main cause of action, if any were stated, and such incidental relief cannot be granted, without reference to any cause of action.

ID.—DISMISSAL OF ACTION UPON ORDER SUSTAINING DEMURRER.—Where no leave to amend the insufficient complaint was applied for, it was not error, or an abuse of discretion, to crder a dismissal of the action upon the order sustaining a general demurrer to the complaint.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

T. Z. Blakeman, for Appellant.

James M. Allen, for Respondent.

SLOSS, J.—This is an appeal by the plaintiff from a judgment of dismissal entered upon an order sustaining a demurrer to her complaint.

The complaint alleges the following facts: Thomas Bell died on October 16, 1892. His will was admitted to probate and letters testamentary were issued to the executors named in the will. Two of the three executors having resigned, the third was removed on March 23, 1900, and on February 19, 1902, the plaintiff was appointed administratrix with the will annexed.

At the time of his death, Thomas Bell was indebted to the defendant, the Bank of California, in the sum of fifty thousand dollars. Of this amount thirty thousand dollars was evidenced by the note of Thomas Bell, five thousand dollars by the note of G. Staacke, ten thousand dollars by the note of John S. Bell, and the remaining five thousand dollars by the note of J. B. Shaw. Each of the three last-mentioned notes was payable to Thomas Bell and was by him indorsed and

delivered to the defendant. As collateral security for the payment of said indebtedness, Bell had delivered to the bank 675 shares of the capital stock of the Bellingham Bay & British Columbia Railroad Company, 3,401 shares of the Black Diamond Coal Mining Company, 3,435 shares of the Bellingham Bay Improvement Company, 130 shares of the capital stock of the Bank of California, and the promissory note of one L. L. Robinson for $29,262.18, payable to the order of Thomas Bell. On July 20, 1893, within ten months after the first publication of notice to creditors of the estate of Bell, the defendant presented to the executors its claim, in which it set out its demand upon the foregoing notes, alleged that all of said notes were secured by a pledge of the shares of stock above mentioned and of the Robinson note, and claimed, in adddition, two items of unsecured indebtedness, amounting to $3,976.69 and $3,859.10, respectively. This claim was allowed by the executors, approved by the judge of the superior court, and filed. During the year 1893 the 130 shares of the capital stock of the Bank of California were sold, pursuant to an order of court, for the sum of $28,757.50, fourteen thousand dollars of which was applied by the defendant on the payment of its claim and the balance turned over to the estate.

The plaintiff alleges upon information and belief that the whole of said sum of fifty thousand dollars was not, at the date of Thomas Bell's death, secured by the pledge of the personal property described, but that five thousand dollars of it,—to wit, that portion evidenced by the note of G. Staacke,—was not secured by the pledge of any part of said property. It is alleged that "on or about the first day of April, 1898, the said defendant without any order of court, or authority therefor whatever, assigned, transferred and delivered to one D. O. Mills" all of the pledged shares of stock (except the stock of the Bank of California already disposed of) together with the certificates representing the same, and "received from the said Mills upon the said assignment the total sum of $40,053.70 after deducting some expenses of said assignment and transfer . . . which sum of $40,053.70 was by said defendant placed to the credit of said estate upon its claim." These shares of stock were of great value and largely in excess of the total indebtedness of the estate to said bank,

but none of the shares were of known or recognized market value. They were not listed upon any stock exchange nor were they dealt in by the public, and it was impossible to ascertain their value without taking an account of the assets and liabilities of the said corporations.

On the seventh day of November, 1900, the defendant collected upon the note of L. L. Robinson, held as collateral, the sum of $30,847.18, and took and applied to its own use therefrom the sum of $22,384.47.

The plaintiff alleges that, as administratrix, she has demanded of the defendant that it account to her for said shares of capital stock pledged to it (except the stock of the Bank of California), and for a statement showing the amount, if any, due from the estate of Bell to said defendant for account of which the said personal property was pledged, "and that this plaintiff be permitted to redeem the said personal property, to wit, the said shares of the capital stock of the said corporations last above mentioned, and that this plaintiff be permitted, if there remains any portion of the debt for which said personal property was pledged, to redeem such personal property by paying to said defendant the amount that may be ascertained to be due to it upon that portion of the indebtedness secured by the pledge of the said personal property." The defendant refused "to make such accounting or to permit plaintiff to redeem the said shares of the capital stock." Said defendant unjustly and without right claims the right to apply out of the proceeds of the sale of said personal property, pledged as aforesaid, and out of the collection of the Robinson note, "in payment of the other portion of its claim approved against the estate of said Bell, to wit: the last two items of said claim, amounting respectively to the sum of $3,976.66 and $3,859.10." The prayer of the complaint is that the defendant be required to account in accordance with the demand alleged to have been made, and that the plaintiff be permitted to redeem the shares of stock pledged, except those sold under order of court, upon the payment to defendant of any balance found to be due, and the plaintiff offers to pay whatever sum may be due on account of any portion of the secured indebtedness remaining unpaid, upon delivery of said shares of stock. There is also a prayer for general relief.

The grounds of the demurrer, which, as we have stated, was sustained, are the want of facts sufficient to constitute a cause of action, the barring of the cause of action by the statute of limitations, certain points of alleged ambiguity and uncertainty, and misjoinder of causes of action.

Where property is pledged to secure specific indebtedness, the pledgee has no right to hold it as security for any other obligation. (Civ. Code, sec. 2891; *Reynes* v. *Dumont,* 130 U. S. 354, [9 Sup. Ct. 486].) If the pledgee wrongfully parts with the property, or, upon tender of the secured debt, refuses to return it, the pledgor may maintain an action at law for damages or, where such relief is appropriate, to regain the property itself by claim and delivery. Or he may, if there are circumstances authorizing a demand for equitable relief, and redemption is possible, bring a suit to establish and enforce his right of redemption.

The complaint in this case was evidently framed with a view to enforcing the plaintiff's right to redeem the shares of stock pledged by her testator, rather than to obtain damages for the conversion. It cannot be an action in claim and delivery, since it is not aimed at specific certificates alleged to be in the possession of defendant. For shares of stock as intangible property, this form of action will not lie. (*Ashton* v. *Heydenfeldt,* 124 Cal. 14, [56 Pac. 624].) But, inasmuch as under our system the court may grant any relief, legal or equitable, to which a party may be entitled, the mere fact that plaintiff in framing her complaint proceeded upon a certain theory of her rights affords no ground for sustaining a general demurrer, if the complaint alleges facts which entitle her to relief upon some other theory.

Viewed as a bill to redeem a pledge, the complaint is defective in that it shows affirmatively that the pledged property has passed out of the possession and control of the defendant. It is alleged that the defendant "assigned, transferred and delivered" to D. O. Mills the shares of stock here sought to be redeemed, and received on such assignment the sum of $40,053.70. "A bill in equity to redeem personal property is essentially a bill for specific performance." (*Angus* v. *Robinson's Admr.,* 62 Vt. 60, [19 Atl. 993].) By such bill the pledgor asks the court to compel the pledgee to carry out his agreement to return the pledged property upon pay-

ment of the debt secured by it. A court of equity will not decree the specific performance of a contract which the defendant has not the ability to perform. (26 Am. & Eng. Ency. of Law, 2d ed., p. 39; *Shields* v. *Trammell,* 19 Ark. 51; *Saur* v. *Ferris,* 145 Ill. 115, [34 N. E. 52]; *Ferrier* v. *Buzick,* 2 Iowa, 136; *Davenport* v. *Latimer,* 53 S. C. 563, [31 S. E. 630]; *Coleman* v. *Dunton,* 99 Me. 121, [58 Atl. 430].) Accordingly, a bill for specific performance must, at the least, be free from averment that the defendant has not the ability to comply with the decree sought. In *Joseph* v. *Holt,* 37 Cal. 250, an action by a vendor for specific performance of an agreement for the purchase of real estate, this court said: "It must be that in an action of this kind the complaint must make a case in which the defendant is at least *prima facie* able to perform. . . . Where a party calls upon a court to compel another to do a particular thing, he ought to allege that he can do it and not leave his capacity to do it in doubt or resting on presumption." It has been held that inability to perform is matter of defense to be presented by answer. (*Greenfield* v. *Carlton,* 30 Ark. 547; *Burden* v. *Curtis,* 46 N. J. Eq. 468, [19 Atl. 127].) But where, as here, the complaint affirmatively shows that the property involved has passed from the possession and control of the defendant, the right to the relief sought is negatived by the bill itself. (*Columbine* v. *Chichester,* 2 Phila. 27; *Roanoke St. Ry. Co.* v. *Hicks,* 96 Va. 510, [32 S. E. 295]. See, also, *Angus* v. *Robinson's Admr., supra,* where this rule was applied to a case of a bill to redeem personal property.)

It is true that, in the case of a pledge of shares of stock in a corporation, the identity of the particular certificates delivered and pledged is not important. (*Atkins* v. *Gamble,* 42 Cal. 86, [10 Am. Rep. 282].) A sale of these certificates will not constitute a conversion, if the pledgee has at all times had in his possession, ready for delivery to the pledgor upon redemption, similar certificates evidencing a right to the same number of shares. (*Thompson* v. *Toland,* 48 Cal. 99; *Hayward* v. *Rogers,* 62 Cal. 348.) It follows that, in an action by the pledgor to redeem, the fact that the particular certificates have been disposed of is not fatal to plaintiff's right. If the pledgee has other certificates for an equal number of shares he may, by the decree, be compelled to transfer them to the

pledgor. (*Krouse* v. *Woodward,* 110 Cal. 638, [42 Pac. 1084].) But there is no presumption that the pledgee has such certificates, and the plaintiff, who has alleged that the pledgee has no longer the ability to restore the identical property pledged, must, if he seeks the delivery of similar property, allege and show that the defendant is in a position to make such delivery. In *Krouse* v. *Woodward,* 110 Cal. 638, [42 Pac. 1084], the complaint did so allege and the finding was in accordance with the allegation.

A further objection to the sufficiency of the complaint as a bill for redemption is that there is no allegation of a tender of the amount secured by the pledge. (*Brittan* v. *Oakland Bank of Savings,* 124 Cal. 282, [71 Am. St. Rep. 58, 57 Pac. 84].) The undertaking of the pledgee is to return the property pledged upon performance of the obligation for which it is pledged as security (*Palmtag* v. *Doutrick,* 59 Cal. 155, [43 Am. Rep. 245]), and no right of redemption arises until the pledgor has performed or offered to perform such obligation. (Civ. Code, sec. 1439; 22 Am. & Eng. Ency. of Law, 2d ed., p. 58.) No such tender is here alleged. Does the complaint aver facts excusing the want of a tender? It is argued that a tender was not necessary because the bank had already realized from the pledged property enough money to pay all of the secured debt. But this result is reached only by including the money received on the transfer of the stock to Mills. Such transfer is assailed by plaintiff as unauthorized, and it is sought by this action to redeem the stock as if it still remained in possession of the bank, subject to the terms of the pledge. The plaintiff cannot in one breath repudiate this transfer and claim the benefits of it. If the transfer to Mills was void as against the Bell estate, the proceeds realized on that sale cannot be treated by the plaintiff as a payment on account of the debt. The debtor might of course ratify the transfer and the application of the proceeds to the payment of the debt, but such ratification would necessarily destroy the right to claim that the property still remained subject to redemption.

Again, appellant maintains that a tender was unnecessary because the debtor did not know the amount of the debt and was seeking, as a part of her relief, an accounting to determine that amount. (Jones on Pledges, sec. 567; *Castoriano* v.

*Dupe,* 145 N. Y. 250, [39 N. E. 1065].)    The complaint however, shows no such uncertainty as to the amount of the debt as would obviate the necessity of a tender.    The claim of the defendant, allowed by the executors and approved by the court, is annexed to the complaint, and shows the precise amount due from the estate to the defendant.    The sums received by defendant on account of the claim are specified in the complaint.    Nor does it appear that the plaintiff is unable to determine what proportion of the debt was secured by the pledge.    All that is shown is that there is a dispute between the parties upon this point, the defendant claiming that all of the notes executed and indorsed by Thomas Bell to the defendant were secured by the pledge, and the plaintiff that the note of G. Staacke for five thousand dollars was not so secured.    This dispute furnishes no reason why the plaintiff should not have made a tender.    She knew the amount due on the notes which, according to her contention, were alone secured, and could readily have tendered this amount and demanded the return of the pledged property. Section 1511 of the Civil Code provides that "The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate: . . . 3. When the debtor is induced not to make it, by any act of the creditor intended or naturally tending to have that effect done at or before the time at which such performance or offer may be made, and not rescinded before that time." Section 1515 reads:  "A refusal by a creditor to accept performance, made before an offer thereof, is equivalent to an offer and refusal, unless, before performance is actually due, he gives notice to the debtor of his willingness to accept it." The mere act of the creditor in designating, in its claim, all of the notes as secured was not such an act as is described in either of these sections.    The statement in the claim was not made with a view to indicating the terms upon which the pledgee would consent to return the pledged property, but was merely incidental to making the formal demand necessary, under the statute, to establish the amount of the liability of the estate.    It was not an act "intended. or naturally tending" to induce the debtor to omit an offer of performance, and there is nothing to show that it did in fact induce such omis-

sion. Both conditions must concur in order to excuse the want of tender under subdivision 3 of section 1511. (*Stanford* v. *Savings and Loan Soc.,* 80 Fed. 54). Nor was it a "refusal to accept performance made before an offer thereof." In *Hanson* v. *Slaven,* 98 Cal. 377, [33 Pac. 266], it is said that "the authorities all agree that in order to constitute an implied waiver of an offer or tender, the refusal must be explicit and positive." (See, also, *Herzog* v. *Purdy,* 119 Cal. 99, [51 Pac. 27].) The mere assertion, unaccompanied by any other act, of a lien greater in amount than that to which the lienor is entitled, will not dispense with the necessity of a tender. (*Scarfe* v. *Morgan,* 4 Mees. & W. 270; *Searight* v. *Calbraith,* 4 Dall. 325, Fed. Cas. No. 12,585; *Hoyt* v. *Sprague,* 61 Barb. 497; *Lamar* v. *Sheppard,* 84 Ga. 561, [10 S. E. 1984]; *Loewenberg* v. *Arkansas and L. Ry. Co.,* 56 Ark. 439, [19 S. W. 1051].) The same considerations apply with equal force to the allegation that the defendant claims the right to apply the proceeds of the sale of the personal property and of the collection of the Robinson note to the payment of the unsecured portion of its demand. It is not alleged that this claim was ever made to plaintiff or any one representing the estate, or that it tended to induce failure to make offer of performance.

If the complaint can be regarded as setting forth a cause of action for damages by reason of the conversion of the shares of stock sold by the defendant to Mills, it is plain that said cause of action is barred by section 338, subdivision 3· of the Code of Civil Procedure. This is one of the points made by the demurrer. The complaint alleges that the unauthorized transfer and delivery to Mills took place on or about the first day of April, 1898. It further alleges that the value of the shares so transferred was in excess of the amount of the secured debt. Immediately upon the transfer there arose a cause of action for such excess. The complaint in question was not filed until March 31, 1902, almost four years after the transfer of the stock. Subdivision 3 of section 338, above referred to, is applicable to all cases "of unlawful taking or detaining of personal property," whatever the form of action. (*Lowe* v. *Ozmun,* 137 Cal. 257, [70 Pac. 87].) It makes no difference that the plaintiff seeks an accounting to determine the value of the stock so transferred. In so far as this may be regarded

as an action to recover the value of such property, the gist of the action is the wrongful conversion. The accounting, if it be a proper case for an accounting at all, is merely incidental to the main purpose of the action. The nature of the right sued upon and not the form of the action nor the relief demanded, determines the applicability of the statute of limitations under our code. (*Lord* v. *Morris,* 18 Cal. 482; *Miller & Lux* v. *Batz,* 131 Cal. 402, [63 Pac. 680] ; *Banks* v. *Stockton,* 149 Cal. 599, [87 Pac. 83].) And it is immaterial whether equitable or legal relief is sought. (*Williams* v. *Southern Pacific Co.,* 150 Cal. 624, [89 Pac. 599].)

We are satisfied that this is not an action to recover money or other property deposited with a bank, within the meaning of section 348 of the Code of Civil Procedure. (See Civ. Code. secs. 1318 et seq.)

It is argued by the appellant that even if there be no right of redemption and no cause of action for damages for the conversion of the stock, the complaint shows facts entitling the plaintiff to a money judgment for the amount received by the defendant as the proceeds of the pledged property and retained by it in excess of the amount of the secured claim. No doubt, as above suggested, the pledgor whose property has been unlawfully disposed of by the pledgee may ratify the transfer and demand the application of the proceeds on account of his debt. He may waive the tort and sue *in assumpsit.* So, here, the plaintiff is not bound to treat the sale to Mills as invalid, but may recognize and adopt such sale and the application of the proceeds made thereon. If she does so recognize it, the amount realized on such sale, together with the other sums received by the bank, would be more than sufficient to pay the entire secured debt, even if that debt included the Staacke note. We need not here decide whether plaintiff's right to receive the surplus over the amount of the secured claim, and the defendant's claim for amounts not secured, are cross-demands which, under the provisions of section 440 of the Code of Civil Procedure are to be "deemed compensated, so far as they equal each other." (See *Ainsworth* v. *Bank of California,* 119 Cal. 470, [63 Am. St. Rep. 135, 51 Pac. 952].) If they are, the total amount received by the defendant was not sufficient to pay its entire claim, and no balance is shown to be due the estate. But,

assuming that section 440 does not apply, the action to recover the amount realized by the bank in excess of its secured claim must rest upon the ratification by the estate of the act of the bank in selling the property. The allegations of the complaint in this case are entirely inconsistent with the view that the plaintiff seeks in any event to recognize the validity of the transfer to Mills and accept its fruits. Throughout she treats the transfer as an invasion of her rights and puts herself in the attitude of repudiating it. We cannot read into this pleading an election to accept the benefits and burdens of this transfer, when the plaintiff, who alone has the right of such election, has chosen to take the opposite stand. While an action for money had and received, based upon the theory just indicated, might lie, an assertion of the right upon which such action would be based is not within the purview of this complaint, or of the relief demanded. The prayer for general relief is to be read in the light of the facts alleged and those facts negative any intent to count upon the transfer to Mills as a valid disposition of the property. The plaintiff, having the right to "waive the tort," has not waived it. (See *Whilden* v. *Merchants' etc. Nat. Bank,* 64 Ala. 1, [38 Am. Rep. 1]; *Chambers* v. *Lewis,* 10 Abb. Pr. 206, 11 Abb. Pr. 210.) We do not hold that the plaintiff has, by bringing this action, made such an election of remedies as will bar her from proceeding against the bank for the surplus proceeds of the security. For the purposes of this case it is enough to say that she is not here so proceeding.

It is argued that the complaint should be sustained as a bill in equity for an accounting of all of the transactions of the bank with reference to the security. But the accounting sought, if a case for an accounting is made, would be only incidental to the main relief sought, which is either a redemption of the property sold, or a recovery of its value. Where there can be no relief upon the main ground, the bill will not be retained for the mere purpose of having an accounting which can lead to no useful purpose. (*Jewett* v. *Bowman,* 29 N. J. Eq. 175.)

For these reasons we think the demurrer was properly sustained. The order sustaining the demurrer directed a dismissal of the action. The appeal is on the judgment-roll without a bill of exceptions. While it may be an abuse of discre-

tion to sustain a demurrer without leave to amend, where a cause of action is stated, and the demurrer is directed to matters of form only (*Schaake* v. *Eagle Automatic Can Co.*, 135 Cal. 472, [63 Pac. 1025, 67 Pac. 759]), no such abuse can, on a record like the one before us, be said to be shown where the facts alleged fail to disclose any right in the plaintiff. The bar of the statute of limitations is not specified in the code as a ground of demurrer (Code Civ. Proc., sec. 430), and that objection to a complaint, while required to be stated in the demurrer, must be deemed to be included within the ground of want of facts sufficient to constitute a cause of action. The demurrer in this case having been properly sustained on the general ground, it was, at least in the absence of a showing that leave to amend was requested, not error to enter judgment of dismissal without granting such leave.

The judgment is affirmed.

Angellotti, J., Shaw, J., Lorigan, J., and Henshaw, J., concurred.