[Civ. No. 3380. First Appellate District, Division Two.—July 14, 1920.]

HOGUE–KELLOGG COMPANY (a Corporation), Appellant, v. W. J. PETIT, Respondent.

[1] SALES—CONTRACT TO RAISE AND DELIVER BEANS—PARTIAL DELIVERY—DEMAND FOR PAYMENT — DUTY OF GROWER — ANTICIPATORY BREACH.—Where a grower, who entered into three contracts to grow, on three separate ranches, and deliver to the buyer at different prices, a certain variety of bush bean, makes a partial delivery of the beans grown, it is incumbent upon him to specify under which contract deliveries are made and under which he claims payment, and upon his refusal or inability so to specify, he is not entitled to payment under any of the contracts; nor can he, while refusing to specify under which contract he demands payment, lay the foundation for an anticipatory breach of all

the contracts by a statement concerning the reason why he is not then paid what he is not then entitled to have.

[2] CONTRACTS—PAYMENT—PROOF OF PERFORMANCE.—It is incumbent for one who seeks payment under any contract to show that he has performed the contract.

[3] ID.—REFUSAL OF GROWER TO SPECIFY CONTRACT—ELECTION BY BUYER—EFFECT OF FAILURE.—The buyer having undertaken to pay for the specifically defined entire crop of beans raised respectively on each of the three tracts of land, when the grower refused to specify under which contract his deliveries were being made, the buyer did not have the right to apply the beans delivered to the satisfaction of any of the contracts; and upon its failure so to do, the deliveries cannot be considered as having been made under the contracts having the higher purchase price, which required the earliest deliveries.

[4] ID.—CONTRACTS FOR DELIVERY OF SPECIFIC GOODS—SECTION 1479, CIVIL CODE, INAPPLICABLE.—Section 1479 of the Civil Code, which provides in substance that where a debtor is bound by several obligations to make payment, and at the time of payment fails to designate upon which of the obligations it is to be applied, the creditor may elect, and if he does not do so the law will apply the payment to the obligation first to be performed, has no application to a case where a party to a contract is obligated to deliver merchandise under entirely distinct contracts fixing a different price to be paid for the merchandise and definitely requiring that the merchandise delivered under each contract should be the entire output of a particular producing unit.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

Robert M. Clarke and Fred N. Arnoldy for Appellant.

Samuel Poorman, Jr., Hunsaker, Britt & Edwards and Hunsaker, Britt & Cosgrove for Respondent.

BRITTAIN, J.—The plaintiff corporation appeals from a judgment entered on the verdict of a jury for $3,984.32, upon a counterclaim set up by the defendant in a suit for the breach of certain contracts, the counterclaim being for the reasonable value of certain beans delivered by the defendant to the plaintiff under the contracts upon which the suit was brought.

On October 23, 1916, the parties entered into a written contract under which the defendant agreed to grow fifty acres of Henderson bush beans, during the farming season of 1917, on land near Encino, in this state, known as the Petit Ranch, and "to deliver the entire crop product thereof." Broadly speaking, the contract was in the ordinary form usually adopted in such cases. The price at which the beans were to be delivered as soon as possible after threshing, properly recleaned, and sacked, f. o. b. cars at Owensmouth, California, was $4.50 per hundred pounds. On February 23, 1917, the parties entered into two similar contracts for beans to be grown and delivered in that year, one being for the entire crop to be grown on eighty acres of land situated near Van Nuys, California, known as Encino Ranch, and the other for the entire crop to be grown on 235 acres of land near Van Nuys, known as the Encino Ranch, except seed and one-third rental. The price of the beans under the last two contracts was seven dollars per hundred pounds.

In its complaint the plaintiff set out three separate causes of action for breach of the contracts respectively, claiming as damages the difference between the contract prices and the market price at the time of the breach, alleging on information and belief the total quantity of beans grown and cleaned in each of the three crops. The defendant denied the breach of any of the contracts, alleged that all three had been broken by the plaintiff, and by counterclaim demanded judgment against the plaintiff for the reasonable value of some 84,000 pounds of beans delivered to the plaintiff. The reasonable value was fixed by the defendant's demand at a rate of something over twelve and a half cents a pound.

While the evidence was marked by sharp conflict in regard to some matters, there was no evidence in conflict with that given by the defendant himself upon certain controlling phases of the case. With much evasion on his part he was brought finally to testify that at the three places indicated he had or controlled land which was planted in beans of the type required by the contracts, and that at the three places respectively he had in such beans more than fifty, eighty, and 235 acres. The crops were weighed and cleaned on each of the three tracts, but the yield per

48 Cal. App.—32

acre was not the same on the three parcels of land. In other words, the entire crop under each contract could not be determined by any computation based on the total quantity of beans raised on the defendant's three tracts of land. So far as the evidence shows, the entire crop on the fifty acres of land for which the plaintiff had contracted at four and one-half cents per pound might have been in excess of the entire crop raised on the 235 acres, for which the plaintiff had contracted to pay seven cents a pound.

The defendant testified positively that he did not know and had never kept any account of the quantity of beans grown or cleaned upon any one of the tracts. This evidence was strengthened by that of the man in charge of the threshing-machine. He stated that the defendant on the completion of the threshing gave him orders not to tell anyone the amount of beans he had threshed. From uncontroverted evidence it appears that the defendant produced on the three tracts in all some 4,000 sacks of beans, and from the defendant's evidence that on the fifty acres he produced at least 300 sacks.

[1] The defendant made three deliveries of beans at the Owensmouth warehouse respectively on September 22, October 15, and October 16, 1917. Each of the contracts required that the beans be delivered as soon as threshed and cleaned. The defendant did not so deliver the beans, but held a quantity back from delivery. The three deliveries aggregated 84,400 pounds, contained in 1,183 sacks. In reliance on the contracts the plaintiff sold beans, and in fulfillment of its selling contracts accepted and on October 18, 1917, shipped the beans theretofore delivered by the defendant. About October 26th the defendant requested or demanded payment of $3,000. There is some conflict in regard to the exact language in which this demand or request was couched, as there is in regard to the exact language used by the agents of the plaintiff in then refusing to make the payment. It is the theory of the defendant and respondent that the demand or request for $3,000 was simply a demand for payment for the beans already delivered, and it is the theory of the appellant that the request was for a payment on account of an amount to which the defendant would become entitled upon completion of the contracts respectively. The respondent claims that the refusal to make

payment upon this demand was upon the sole ground that the contracts were entire and not severable, and that the appellant's agent in stating that payment would not be made until delivery was completed broke each of the three contracts. It is claimed by the appellant that the refusal to pay at that time was because the respondent refused then to give any information in regard to the probable quantities of beans which would be delivered under the three contracts or to tell under which of them the 1,183 sacks of beans had been delivered. Lengthy argument is addressed to the court upon the question of whether each of the contracts was entire or severable. If the respondent's contention upon this matter be conceded for the purpose of the present case and it be assumed he was entitled to payment for each delivery of beans at the contract price, before he was entitled to payment for any beans, it was incumbent upon him to specify under which contract deliveries had been made and under which contract he claimed payment. Upon his refusal or inability so to specify, he was not entitled to payment under any of the contracts, nor could he while refusing to specify under which contract he demanded payment lay the foundation for an anticipatory breach of all the contracts by a statement concerning the reason why he was not then paid what he was not then entitled to have.

The appellant's first specification of error is based upon an instruction given to the jury which reads as follows: "If the plaintiff, Hogue-Kellogg Company, without excuse, refused to pay the defendant in whole or in part of the beans delivered to the plaintiff, amounting to 84,400 lbs., after request for such payment by the defendant, the plaintiff by such conduct first breached the contracts with the defendant and was not thereafter entitled to claim the further delivery of beans from the defendant, and would not be entitled to recover damages for the failure of defendant, if he did fail, to make further deliveries. It is for you to determine under the evidence that you have heard whether there was any excuse for failing to pay for the beans that had actually been delivered."

This instruction was clearly erroneous. [2] In the first place, it is incumbent for one who seeks payment under any contract to show that he has performed that contract. There is no evidence in the record to show under which of

the three contracts the three deliveries were made. Accepting the respondent's theory of the severability of each of the contracts, on the evidence before the court it followed as a matter of law that the defendant had not proved the partial performance of any one of the three contracts which would have entitled him to payment. It was error to submit to the jury the question of whether the plaintiff was excused from payment, and it was error to instruct the jury that if they believed the plaintiff had refused to pay without an excuse that plaintiff "by such conduct first breached the contract." Argument based on the proposition that the respondent was entitled to $3,000 regardless of which of the contracts on which the claim was based, is extremely specious. None of the contracts provided for advances or partial payments. When the refusal to pay was made, the appellant would have been unsafe in making the payment because if it had paid for the beans delivered at four and one-half cents per pound, the respondent might thereafter have claimed that the appellant had broken the contract upon a showing that the beans delivered were grown as a part of the crop covered by one of the two seven-cent contracts. If, on the other hand, the appellant had paid at the rate of seven cents per pound, the respondent might thereafter have shown that the beans were really four and a half cent beans.

[3] The respondent contends that when he refused to specify under which contract his deliveries were being made, it was the right of the appellant to apply the beans delivered to the satisfaction of any of the contracts, and upon the failure of the latter to do so, deliveries would be considered as having been made under the seven-cent contracts, which required the earliest deliveries. The statement of this contention under the facts of this case show its fallacy, because the appellant did not contract to pay for beans generally, but it did undertake to pay for the specifically defined entire crop of beans raised respectively on each of the three tracts. Delivery of beans grown on the 235 acres did not fulfill any of the conditions binding upon the respondent under the contract relating to the fifty acres, neither did the delivery of beans grown on the fifty acres in any way satisfy his obligations to deliver the entire crop of beans grown on the eighty acre or the 235 acre tracts. [4] The

trial court apparently accepted the theory of the defendant in regard to the application of section 1479 of the Civil Code to the facts of this case. It provides in substance that where a debtor is bound by several obligations to make payment, and at the time of payment fails to designate upon which of the obligations it is to be applied, the creditor may elect, and if he does not do so that the law will apply the payment to the obligation first to be performed. This section in every case called to the attention of the court has been applied to payments of money generally. It certainly has no application to a case where a party to a contract is obligated to deliver merchandise under entirely distinct contracts fixing a different price to be paid for the merchandise and definitely requiring that the merchandise delivered under each contract should be the entire output of a particular producing unit. Upon this branch of the case the appellant specifies as error the giving of an instruction reading as follows: ''The defendant was under no obligation to specify which of the three contracts mentioned in the plaintiff's second complaint, whether one or more of them, was the agreement upon which the delivery of the 84,400 pounds of recleaned beans was made. If the defendant did not direct the application of the delivery made by him upon any one or more of said three contracts, then the plaintiff had the right to make such application within a reasonable time as it saw fit; and if the plaintiff made no such application, then the law applied such delivery ratably to the extinction of the obligations to deliver beans under the two contracts of February 23, 1917, under both of which the price to be paid for beans was seven dollars per hundred weight, so that if the defendant gave no direction for the application of the delivery of beans made by him under any of the three contracts, and plaintiff made no such application within a reasonable time, when it is deemed by the law that the delivery of 84,400 pounds was to be paid for by the plaintiff at the rate of seven dollars per hundred weight and the amount which became payable for such delivery was $5,908, less deductions for bags, seed and interest.''

The error of this instruction is so clear and so prejudicial that the judgment would have to be reversed upon it alone. It is not the law that where one contracts to deliver the entire crop of beans grown at a specific place, he may sub-

stitute beans grown in some other place and recover under the contract. In dealing with money generally under section 1479 of the Civil Code, the law can apply money which has no earmarks to the extinction of one or another obligation, but the law cannot apply to the performance of a contract to deliver specific merchandise any other merchandise.

Upon the erroneous assumption of the trial court that where no performance of any contract was shown by the defendant, the question of whether there was excuse for the plaintiff in refusing payment was one of fact and not of law, and the further assumption on the part of the trial court that section 1479 of the Civil Code was applicable to the facts of this case, the jury were instructed that if they should find for the plaintiff, the amount of its recovery would be $6,925.49, and in case the finding should be for the defendant the amount of the recovery would be $3,984.32. To reach these figures, the court not only assumed as a matter of law that deliveries of beans which may have been grown under the contract providing for a payment of four and one-half cents a pound were applicable to one or both of the contracts for entirely different beans to be paid at the rate of seven cents a pound, but entirely ignored plaintiff's cause of action based on the contract for delivery of the four and one-half cent beans. If the entire delivery, as a matter of fact and not as a matter of law, was of seven-cent beans, and there is no evidence that such was the fact, it follows that there was no delivery under the four and one-half cent contract. It has already been shown that the statements made at the time the respondent was rightly called upon to designate under which of the contracts he was making deliveries were not sufficient to constitute as a matter of law an anticipatory breach of any of the contracts. The respondent could not recover for beans delivered without showing a performance or readiness to perform any of the contracts on his part. (Civ. Code, sec. 1439; *Barron* v. *Frink,* 30 Cal. 486; *Karales* v. *Los Angeles Creamery Co.,* 36 Cal. App. 171, [171 Pac. 821], and cases cited therein.)

It is further contended that the evidence was insufficient to justify the implied finding that the plaintiff refused to pay for beans delivered, and that it was insufficient to sustain the implied finding that there is due and unpaid from

the plaintiff to the defendant the sum of $3,984.32. In view of what has been said it is not necessary to make any further analysis of the evidence, but it is the opinion of this court that each of these specifications is well founded. Neither is it necessary to discuss other matters of law presented by the briefs. An examination of the entire record shows that the defendant contracted to sell beans in November, 1916, at four and one-half cents. In February, 1917, the market price had increased to seven cents a pound. In his counterclaim the defendant demanded payment for the beans delivered at what he asserted was their reasonable value at the time deliveries were due under these contracts, at a rate of a little over twelve cents a pound. A portion of the beans which he admitted grew on the three tracts of land were held back from delivery and were burned. He settled with the insurance company for the burned beans at the rate of twelve and one-half cents per pound, and after his refusal to make deliveries he sold his crop at thirteen cents a pound or over. A statement made in the case of *Herzog* v. *Purdy,* 119 Cal. 99, [51 Pac. 27], might well have been made in anticipation of this appeal. It was there said: "The whole case tends to show that the defendant was ready and willing, prompt and eager, not to perform the contract on his part, but to take advantage of a slip of the plaintiff and to avoid performance."

The judgment is reversed.

Nourse, J., concurred.

Langdon, P. J., deeming himself disqualified to act in this case, on stipulation of counsel made in open court, it was submitted to the court for decision by Justices Brittain and Nourse.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 10, 1920.

All the Justices concurred.