Syllabus.

# Richmond.

## JOHNSON V. MUNDY.

### November 14, 1918.

Absent, Whittle, P.

1. APPEAL AND ERROR—*Final Decree—Section 3454, Code of 1904.*—An order overruling exceptions to an answer for insufficiency is not a final decree or order, as that term is used in section 3454, Code of 1904, allowing appeals from such decrees or orders.

2. ·APPEAL AND ERROR—*Decrees Appealable—"Principles of the Cause"—Code of 1904, Section 3454.*—In a suit to determine whether certain gifts from a parent to a child and her husband were gifts or advancements, an order overruling plaintiff's exceptions to defendants' answer, which decided against the plaintiff a very important question to him, namely, the right to the relief sought by his bill of a discovery by the defendants of all sums of money or property received by them or either of them from the decedent, determined a rule of evidence by which the rights of the parties were to be finally worked out and adjudicated ·a "principle of the cause," and hence is appealable.

3. WITNESSES—*Transactions with Decedents.*—In a suit to determine whether certain gifts from a parent to a child and her husband were gifts or advancements, the donor being dead the recipients of the gifts are not competent witnesses to explain that the gifts were not intended as advancements.

4. ADVANCEMENTS—*Presumption.*—In cases of alleged advancements the ·mere *factum* of a substantial gift, unexplained, is in itself evidence that the gift was intended as an advancement. The latter may be inferred from the former.

5. ANSWER—*Discovery—Waiver of Answer under Oath.*—If a plaintiff, in a bill for equitable relief (which the court has jurisdiction to give independent of discovery), prays for certain disclosures of fact by the defendants, in aid of such equitable relief, but waives answer under oath, the plaintiff cannot except to the answer as insufficient because the respondents, although answering fully as to all other portions of the bill, fail to make

the discovery asked for. In the absence of statute, or some rule of court authorizing it, there can be no discovery compelled by a bill waiving answer under oath, and section 3281 of the Code of 1904 has not changed this established rule of procedure in chancery.

6. DISCOVERY—*Object of.*—The immediate object of discovery in all bills in equity was, in its origin, and still is, *not to obtain relief*, but *evidence*. The discovery enables one party to search the conscience of his antagonist and to compel him to make disclosures upon oath of facts necessary to the preservation of the rights of the former, which he otherwise might not be able to prove.

7. DISCOVERY—*Jurisdiction of Equity.*—Except in cases of mixed bills of discovery, where the statute law on the subject does not expressly abrogate the jurisdiction of courts of equity to compel discovery (and the statute law in Virginia does not), that jurisdiction still exists.

8. DISCOVERY—*Extent of.*—Except in a case of a mixed bill of discovery, as to which a different rule prevails, it has been long well settled, as the result of the development of equity jurisdiction, that a plaintiff in equity is not confined in his right to discovery to cases where he cannot otherwise prove the facts sought to be supplied in evidence by means of discovery, but he may require this discovery, either because he cannot prove the facts, or in aid of proof, and to avoid expense.

9. ANSWER—*Double Office—Pleading and Evidence.*—An answer in cases where relief is sought, properly consits of two parts; and in fact performs a double office. It consists, first, of the defense of the defendant to the case made by the bill; and, secondly, of the examination of the defendant on oath, as to the facts charged in the bill, of which a discovery is sought, and to which interrogatories are usually addressed.

10. ANSWER—*Sufficiency.*—The answer, as a pleading, may traverse each and all of the material allegations of the bill directly, distinctly, categorically and unequivocally, but that is not enough, if the plaintiff insists upon a full answer. It must go further and state affirmatively the facts constituting the defense of the respondent, whether that defense is in conflict, in whole or in part, with the allegations of fact in the bill, or is in confession and avoidance.

11. ANSWER—*Time for Filing.*—Although it is true that under section 3275 of the Code of 1904 a defendant may be allowed, under certain restrictions, to file his answer at any time before final decree, that does not affect the right of the plaintiff, by the proper proceeding, to have the court compel him to answer sooner.

12. ANSWER—*Sufficiency.*—The defense set up in the answer should be a sufficient defense; and the plaintiff is entitled to insist upon an answer, not only according to the "knowledge" of the defendant, but also "as to his remembrance, information and belief."

13. ANSWER—*Answer not under Oath—Exceptions.*—An answer not under oath is not free from all exception for insufficiency. But the requirements of modern equity procedure as to affirmative statements of defense in an answer, when considered merely as a pleading, does not lead to the result of allowing a plaintiff to compel a respondent to go beyond traversing each and all of the material allegations of the bill and giving an affirmative statement of facts constituting his own defense, and compel him to also add a statement of facts not a part of his defense, but a part of the plaintiff's case, and which the plaintiff needs and seeks *as evidence* to support his case.

14. ANSWER—*Waiver of Answer under Oath—Rule that Defendant must Answer Fully.*—In the instant case where complainant waived an answer under oath, the defendants having answered fully all of the allegations of the bill, except the interrogatory, they could properly refrain from answering further, and this notwithstanding the general rule that having answered defendant must answer fully.

Appeal from an order of the Circuit Court of Nelson county. Decree for defendants. Complainant appeals.

*Affirmed.*

The appellant was plaintiff and the appellees defendants in the court below, and they will be hereinafter referred to accordingly.

The questions presented in the cause are raised by exceptions of the plaintiff to the answer of the defendants for insufficiency.

The bill was filed for the settlement, distribution and division of the estate, real and personal, of C. I. Johnson, deceased, who died intestate, and was the father of the plaintiff and of the defendant, Mrs. Annie C. Mundy, the two being the only children and heirs at law of the decedent. J. A. Mundy is the husband of Mrs. Annie C. Mundy.

The material allegations of the bill are contained in the sixth paragraph thereof, and are the following:

"6th. Complainant further shows unto your honor that his sister, Mrs. Mundy, received from her father in his lifetime certain estate, both real and personal; that J. A. Mundy, the husband of complainant's said sister, received from said C. I. Johnson in his lifetime other estate of very considerable amount. The said C. I. Johnson also gave considerable property to the daughter of said J. A. Mundy, which upon the death of said daughter, passed to the said J. A. Mundy.

"Complainant's said father, in his lifetime, gave to complainant certain real and personal property, the value of which complainant supposes to be between $40,000 or $45,000. A full and accurate list of such property will be filed in this cause during its progress, if desired. The said C. I. Johnson gave to complainant's son property of the aggregate value of about $40,000.

"Complainant avers that it was the purpose and intention of his said father that the money and property received by complainant and his sister and her husband, as aforesaid, should stand upon the same footing and be treated exactly alike, and he is advised that such is the law.

"Complainant is advised that to the extent either of his father's children or the husband of his daughter may have received any property from his said father in his lifetime; that the amount or value thereof will be brought into hotch-pot, before the party receiving the same will be entitled to receive anything more from the said estate.

"Complainant believes not only the statute in such case made and provided requires, but that equity and justice demand, that in the division of his father's said estate; his sister should be charged with the money and property received by her and her husband aforesaid, and complainant charged with the money and property received by him, and

he is willing and desirous that it shall be done. Certain it is that it will be impossible to settle up and distribute the said estate between his sister and himself, until it is settled and determined just what relation these items have or bear to the said estate."

The bill waives answer under oath, and the prayer thereof, so far as material, is as follows:

" * * complainant prays that * * the said · * * Annie C. Mundy and J. A. Mundy may be made parties defendant thereto, with leave to answer the same, but not under oath, such oath being hereby waived; that the said Annie C. Mundy and J. A. Mundy may be required to show any and all sums of money or property received by them or either of them from the said C. I. Johnson in his lifetime; that it may be settled and determined to what extent money or property given by the said Johnson to his children and son-in-law are to be charged in the division of his estate; * * "

The defendants, Mrs. Annie C. Mundy and J. A. Mundy, her husband, filed their joint and separate answer, not under oath, to the plaintiff's bill. The answer responds directly, distinctly, categorically and unequivocally to every paragraph of the bill, except to the sixth paragraph thereof, above quoted. The response of the answer to such paragraph of the bill is as follows:

"(6) Respondents deny that it was the purpose and intention of the said C. I. Johnson that any money or property that he may have given respondents in his lifetime should be treated as advancements and now brought into hotchpot and charged to respondent, Annie C. Mundy, before she will be entitled to receive anything more from the said estate.

"On the contrary, respondents aver that any money or property given them by the said C. I. Johnson in his lifetime were intended by him as gifts and not as advance-

ments.   Any gifts made to the said respondent, J. A.
Mundy, by said C. I. Johnson were for a valuable consid-
eration, the said J. A. Mundy having been induced by the
said C. I. Johnson to give up his work as a contractor and
to come and live near the said C. I. Johnson and assist him.

"Respondent Annie C. Mundy was her father's favorite
child, with whom he spent much of his time and she in
innumerable ways ministered to his comfort.   He testified
to his preference for her on many occasions and indeed at
one time made a will in which he gave her all of the prop-
erty that he might own at his death.

"In his lifetime he made such provision as he desired
to make for the said complainant, John E. Johnson, by
making him large gifts of money and property, including
a one-half interest in the very profitable business of the
firm of C. I. Johnson & Son.

"The said will was made in duplicate one copy being
given respondents to keep and the other being kept by the
said C. I. Johnson, and both copies after having been kept
for several years were destroyed by the said C. I. Johnson,
at the request of the respondents who desired to avoid the
family disagreement likely to follow therefrom if such a
will should be in force at the time of the death of the said
C. I. Johnson."

The exceptions to the answer are as follows:

"The plaintiff, by counsel, excepts to the joint answer
filed in the above styled causes by Mrs. Annie C. Mundy
and J. A. Mundy, her husband, because:

"1st. The said answer is insufficient, in not disclosing
what sums of money and property was received by them,
or either of them, from the said C. I. Johnson in his life-
time, as required by the bill.

"2nd. The said answer, instead of giving the information
asked for in the bill, whilst practically admitting that they
did receive money or property, or both, from the said C. I.

Johnson, in his lifetime, fails to disclose the character and amount thereof, as required by the bill.

"3rd. The said answer seeks to evade the issue, by stating a legal conclusion, upon which the said defendants are not entitled to pass, and as to which they were not called upon to make any response.

"Wherefore, the plaintiff prays that the said defendants may be required to file a further answer, fully setting out all the various items of money or property received by them, or either of them, from the said C. I. Johnson in his lifetime."

The court below, being of opinion that the answer was legally sufficient, entered the order complained of, which overruled the exceptions, and the plaintiff assigns such action as error.

The defendants submit that the appeal should be dismissed "on the ground that the order appealed from is not a final decree;" that "it is a mere refusal of the court to allow exceptions to an answer for insufficiency;" that "it settles no question involved in the proceedings, but merely a question of pleading;" and they submit that "it is   *   * clearly not an appealable order, and the appeal should therefore be dismissed as improvidently awarded. *Hobson* v. *Hobson,* 100 Va. 216, 40 S. E. 899; *Smith* v. *Pyrities Mining, etc. Co.,* 101 Va. 301, 43 S. E. 564.

*Caskie & Caskie,* for the appellant.

*Harrison & Long* and *Aubrey E. Strode,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

1. We are met on the threshold of the case by the question whether the order complained of is appealable.

This question is not free from difficulty. Its determination depends, of course, upon the proper construction and application of section 3454 of the Code. That statute, so far as material, provides as follows: " * * any person who is a party to any case in chancery wherein there is a decree or order * * adjudicating the principles of a cause, or any person thinking himself aggrieved * * by a final * * decree or order in any civil case, may present a petition, if the case be in chancery, for an appeal from the decree or order: * * "

We do not consider the order complained of a final decree or order. Did it adjudicate "the principles of the cause?"

In *Hobson* v. *Hobson,* 100 Va. 216, 40 S. E. 899, cited by the defendants, the appeal was sought from an order sustaining a demurrer to an amended bill filed at rules and dismissing same upon the ground that it made an entirely new case inconsistent with and repugnant to the case stated in the original bill. This court dismissed the appeal. The court said: "The order appealed from is not a final decree. The original proceedings are still pending, may be revived against the representatives of the deceased parties and proceeded with as if the amended bill had never been filed." It is true this court in that case held that the order did not adjudicate the principles of the cause. But, as stated in the opinion therein, that was "a mere refusal of the court to allow the pleadings to be amended in the manner attempted by the amended bill, and settles none of the questions involved in the original proceedings." The latter cannot be said of the order complained of in the instant cause.

The order we have now under consideration decided against the plaintiff a very important question to him, involved in the original proceeding, namely, the right to the relief sought by his bill of a discovery by the defendants of "all sums of money or property received by them, or either

of them from, the said C. I. Johnson" (the father of Mrs. Mundy and the plaintiff) in his lifetime." The order denied to the plaintiff that relief. If such relief had been granted to him, notwithstanding his waiver of answer under oath, the rights of the plaintiff would have been finally worked out by the court in the cause by having to regard the gifts to defendants disclosed by their answer as facts proved therein, unaccompanied by proof of any explanation by defendants that the gifts were not intended as advancements; for, having gotten such admission of the *factum* of the gifts, the plaintiff would have had no need to call the defendants as witnesses in the case, and, it must be presumed, would not in that event have so called them. In such case, their father, with whom the transactions in question were had, being dead, the defendants would not be competent witnesses in their own behalf on the subject, and could not by their testimony as witnesses in the cause supply evidence of any explanation of the gifts. That situation would be much to the advantage of the plaintiff, since in cases of alleged advancements the mere *factum* of a subtantial gift, unexplained, is in itself evidence that the gift was intended as an advancement. The latter may be inferred from the former (*Hill* v. *Stack,* 122 Va. 280, 94 S. E. 792) ; whereas the effect of the order complained of is to require that the plaintiff, in order to obtain discovery by answer of the defendants, must withdraw his waiver of answer under oath and by amending his bill require an answer under oath as to the specified interrogatories. Under such procedure, the admission by the defendants of the gifts would be accompanied by the statements in their answer, quoted in the above statement of the case, which would be explanatory evidence in behalf of defendants in the cause, to overturn which would require the production by the plaintiff of two witnesses, or one witness and corroborating circumstances, furnishing evidence to the contrary.

And if the plaintiff has to resort to calling the defendants to the stand as witnesses to prove the *factum* aforesaid, such testimony will come accompanied by the explanatory statements contained in their answer as aforesaid, and this, too, would put the plaintiff in a worse position than if he could obtain proof of such *factum* by answer of defendants not under oath.

It is true that there is a *bare possibility* that the defendants might be able to produce other testimony than their own, proving declarations of the father accompanying the gifts to them and showing that they were not made as advancements, in which case the plaintiff would derive no ultimate advantage by obtaining the discovery he prays for in the form in which it is sought. Courts, however, do not deal with bare possibilities, but, in civil cases (with some exceptions which do not include the cause before us), with what is more probably true in accordance with the facts as actually presented; and upon the record in this case, and in view of the nature of the facts sought to be disclosed, it is most probable that no other testimony is in existence, or at least no other as direct testimony and of the same probative value is in existence, as that of the defendants, the donees of the gifts in question. Hence, we are satisfied from the record in the case before us, that if the plaintiff could have the order of the court below reversed, as he seeks to do, and then obtain the discovery he seeks, upon the terms upon which he seeks it, the evidence by which his rights must be finally worked out in the cause would be different from what it will be if the order is allowed to stand unreversed.

In *Lancaster* v. *Lancaster*, 86 Va. 201, at p. 204, 9 S. E. 988, this court said: "It is difficult, if not impossible, to define exactly what is meant by adjudicating the principles of the cause in such a way as to fit every case; but it must mean that the rules or methods by which the rights of the

parties are to be finally worked out have been so far deter-
mined that it is only necessary to apply those rules or meth-
ods to the facts of the case in order to ascertain the rela-
tive rights of the parties with regard to the subject matter
of the suit."

This definition does not in terms precisely fit the case
now before us, but almost so. The order in the instant
cause determined *the rule of evidence* by which the rights of
the parties are to be finally worked out, which is the same
thing, in substance, as determining the rule by which the
rights of the parties are to be finally worked out.

The case of *Smith* v. *Pyrites etc. Co.*, 101 Va. 301, 43
S. E. 564, cited by the defendants, does not bear on the
question of whether the order under consideration adjudi-
cated the principles of the cause.

For the foregoing reasons we are of opinion that the or-
der complained of in the case before us adjudicated a prin-
ciple of the cause and hence is appealable.

We come now to the question raised by the exceptions to
the answer of the defendants for insufficiency, noted in the
above statement of the case, and the assignment of error
thereon.

The question thus raised and presented to us for decision
may be stated as follows:

2. If a plaintiff, in a bill for equitable relief (which the
court has jurisdiction to give independent of discovery),
prays for certain disclosures of fact by the defendants, in
aid of such equitable relief, but waives answer under oath,
can the plaintiff except to the answer as insufficient because
the respondents, although answering fully as to all other
portions of the bill, fail to make the discovery asked for?
In other words, can a plaintiff in such case waive an an-
swer under oath, and yet compel discovery?

This question arises under the statute in Virginia (Pol-
lard's Code 1904, sec. 3281) which was first enacted by the

General Assembly at its session of 1883-4, and is as follows: "If the complainant in a suit of equity shall, in his bill, waive an answer under oath, or shall only require an answer under oath, with regard to certain specified interrogatories, the answer of the defendant, though under oath, except such part thereof as shall be directly responsive to such interrogatories, shall not be evidence in his favor, unless the cause be heard upon the bill and answer only; but may, nevertheless, be used as an affidavit with the same effect, as heretofore upon a motion to grant or dissolve any injunction, or upon any other incidental motion in the cause; but this shall not prevent a defendant from testifying in his own behalf, where he would otherwise be a competent witness."

This statute was taken from the 41st Rule of Practice of Federal Courts of Equity, as amended by the rules promulgated by the Supreme Court May 6, 1872 (*Throckmorton* v. *Throckmorton*, 86 Va. 770, 11 S. E. 289), which is in precisely the same language as the Virginia statute aforesaid.

The question under consideration is one which has not been heretofore decided by this court, and upon which the text-writers and the decisions in other jurisdictions are in conflict. Its correct solution is perplexed with difficulties, as is abundantly disclosed by the authorities on the subject. We are indebted, however, to counsel on both sides of the case for exceptionably able and illuminating arguments, and pertinent citations of authorities, and references to the fundamental principles involved.

The plaintiff in the cause before us takes the position, that under our statute full answer will be required, including the discovery prayed for in such a bill as that of the plaintiff, even though oath to the answer is waived; and the following authorities are cited and relied on to sustain such position, namely: 14 Cyc. 315; 1 Bates' Federal Eq.

Pr., sec. 118; *Colgate* v. *Compagnie Francaise, etc.* (C. C. Dist. N. Y.), 23 Fed. 82; *Whittemore* v. *Patten,* (C. So. Dist. Cal.), 81 Fed. 527; *National, etc. Co.* v. *Interchangeable, etc. Co.* (C. C. Mo.), 83 Fed. 26; *Uhlman* v. *Arnholt, etc. Co.* (C. C. Pa.), 41 Fed. 369; *Slessinger* v. *Buckingham, etc.* (C. C. Cal.), 17 Fed. 454; Foster's Fed. Pr. (4th ed.), p. 553; and *Manley* v. *Mickle,* 55 N. J. Eq. 563, 37 Atl. 738.

The defendants, on the other hand, take the position that a discovery, *ex vi termini,* requires an answer under oath. That that is the essential ingredient; that without the oath there can be no "searching of the conscience," no obtaining of *evidence,* and consequently no discovery; and that, hence, the plaintiff, having waived an answer under oath, cannot compel the discovery prayed for; and the following authorities are cited and relied on to sustain such position: *Roanoke St. Ry. Co.* v. *Hicks,* 96 Va. 510, 32 S. E. 295; *Union Bank* v. *Geary,* 5 Pet. 99, 8 L. Ed. 60; *Patterson* v. *Gaines,* 6 How. 550, 12 L. Ed. 553; *Huntington* v. *Saunders,* 120 U. S. 78, 7 Sup. Ct. 356, 30 L. Ed. 580; 1 Street on Federal Eq. Pr., sec. 789, p. 476; *Field* v. *Hastings* (C. C. N. Dist. Iowa), 65 Fed. 279; *Tillinghast* v. *Chace* (C. C. Mont.), 121 Fed. 435; *Colohan* v. *Holland Cook Mfg. Co.* (D. C. Wash.), 201 Fed. 607; *Victor G. Bloede Co.* v. *Carter* (C. C. Dist. N. Y.) 148 Fed. 127; *Excelsior Wooden Pipe Co.* v. *City of Seattle,* 55 C. C. A. 157, 117 Fed. 140; *Shepherd* v. *Akers,* 1 Tenn. Ch. 326; *Smith* v. *Insurance Co.,* 2 Tenn. Ch. 599; *Markham* v. *Townsend,* 2 Tenn. Ch. 713; *Streeter* v. *Braman,* 76 N. J. Eq. 371, 74 Atl. 659; and *Daab* v. *N. Y. &c. Ry. Co.,* 70 N. J. Eq. 489, 62 Atl. 449.

There is a statute on the subject in Rhode Island and orders of court in Massachusetts and New York, which are so different from the Virginia statute that we leave out of consideration the decisions from those States cited and referred to in argument, although they have been carefully examined and considered.

The authorities cited, both for the plaintiff and the defendants, are in accord in the view that in the absence of statute, or some rule of court authorizing it, there can be no discovery compelled by a bill waiving answer under oath. All the authorities are in accord in the position that by the ancient and firmly established rule of the forum of chancery no discovery could be compelled except by answer under oath. The conflict in the authorities has arisen over the question whether such a statute as that we have under consideration, or a similar statute, or rule of court, has changed the established rule of procedure in chancery just mentioned.

Whether the discovery is sought by a pure, or a mixed bill of discovery, or by a bill for other equitable relief and for discovery in aid of such relief (as in the cause before us), is immaterial, insofar as the precise point is concerned of whether any discovery can be compelled by answer not under oath. There are marked differences between the use which may be made of the discovery when obtained; the force and effect of it as evidence; and when the plaintiff is entitled to discovery, in cases of the different characters of bills in equity seeking discovery, some of which throw some side lights upon the question we have under consideration, but they are not of sufficient help in the decision of that question to justify taking up here the space that would be required to consider them in detail. Such differences are well understood. They are set forth in the text-writers and decisions on the subject. It is deemed sufficient here to say that all the authorities concur in the position that that feature of all bills in equity which seeks discovery, whether the bills are technically bills of discovery or not, had its origin because of the inadequacy of the common law, in that it did not permit the parties in interest, or to a suit, to be examined as witnesses, nor provide any means for compelling a party to produce

books or documents, however necessary they might be to the suit or defense of another. The immediate object of discovery in all bills in equity was, in its origin, and still is, *not to obtain relief,* but *evidence.* The discovery enables "one party to search the conscience of his antagonist and to compel him to make disclosures upon oath of facts neces-sary to the preservation of the rights of the former, which he otherwise might not be able to prove." *Roanoke Street Ry. Co.* v. *Hicks, supra* (96 Va. 510, 32 S. E. 295).

We will notice here, however, that some of the author-ities cited by the defendants go to the length of holding that, since the enactment of the modern statutes in Eng-land and most if not all of the United States, which have abolished the restrictive rule of the common law above adverted to, and which authorize the examination of parties to an action or suit as witnesses, by interrogatories or otherwise, and provide for the compelling of the production of books and documents, the jurisdiction of courts of equity to compel discovery has been abrogated, or has become obsolete; and that holding is urged by the defendants upon our favorable consideration. We do not, however, concur in that view, except, perhaps, as to cases of mixed bills of discovery, where the jurisdiction at law is sought to be transferred to a court of equity, on the sole ground that discovery in equity is necessary. *Colgate* v. *Compagnie Francaise, etc., supra,* 23 Fed. 84-5; *Larkey* v. *Gardner,* 105 Va. 718, 54 S. E. 886. On principle, and in accordance with the great weight of authority, we think that (except in cases of mixed bills of discovery) where the statute law on the subject does not expressly abrogate the jurisdiction of courts of equity under consideration (and the statute law in Virginia does not), that jurisdiction still exists. Hogg's Eq. Pr., sec. 162; 6 Ency. Pl. & Pr., pp. 736-740; 2 Beach Mod. Eq. Jur., sec. 855. Moreover, except in a case of a mixed bill of discovery, as to which a different

rule prevails, it has been long well settled, as the result of the development of equity jurisdiction, that a plaintiff in equity is not confined in his right to discovery to cases where he cannot otherwise prove the facts sought to be supplied in evidence by means of discovery, but he "may require this discovery, either because he cannot prove the facts, or in aid of proof, and to avoid expense." Story's Eq. Pl., (10th ed.), sec. 845; 4 Minor's Inst. (2nd ed.), p. 1310.

However, although we are of opinion that the court below had jurisdiction in the cause before us to compel the discovery prayed for in aid of the other equitable relief sought therein, if sought by bill requiring the discovery by answer under oath; the question remains did it have power to do so by requiring the discovery to be made by answer not under oath?

Reverting again to the authorities cited pro and con by the plaintiff and defendants, as above noted, an examination of them discloses that those cited by the defendants have, for the most part, kept clearly in view the double function served by an answer in a suit in equity, under the procedure established in that forum, which is set forth by the text-writers and decisions on the subject. As said in Story's Eq. Pl. (10th ed.), sec. 850: "An answer in cases where relief is sought, properly consists of two parts; and in fact performs a double office. It consists, first, of the defense of the defendant to the case made by the bill; and, secondly, of the examination of the defendant on oath, as to the facts charged in the bill, of which a discovery is sought, and to which interrogatories are usually addressed.

"It combines together, therefore, two proceedings, which in the civil law are completely separated; and which are also separated in the practice of the ecclesiastical courts * * In the civil law, as we have seen, the defendant first puts in his defensive allegation to the claim made by the plaintiff; and after an answer to that is put in, the plain-

94

tiff propounds, in a sort of supplemental libel, called the *libellus articulatus*, his interrogatories respecting the charges made in the positions of the plaintiff, as they are called (that is in the bill of complaint) ; and the defendant then responds to these interrogatories. In the ecclesiastical courts, where also the defendant is required to make an answer or discovery upon oath, the answer to the interrogatories is a wholly distinct instrument from the responsive allegation (as it is called) to the libel, which contains the defense of the defendant. In a bill in equity both of these distinct parts are united in one instrument, called an answer; and this ambiguity in the use of the word *answer*, importing this double sense and office, has sometimes led to erroneous decisions and to no small confusion in language." Mr. Minor, 4 Minor's Inst. (2nd ed.), p. 1311, also refers to this double function of an answer, and says : " * * the ambiguity arising from this source has led to some confusion."

And we find from an examination of the authorities cited for the plaintiff, that while most of them recognize the two functions of an answer above adverted to—the first, that of a pleading, and the second, that of supplying testimony or documentary evidence—they confuse, or do not clearly distinguish between the two functions, and permit the ambiguity, to which Mr. Minor and Judge Story refer, to becloud their reasoning. To illustrate: Such authorities, to a large extent, address themselves to the consideration of the broad question of whether an answer to a bill seeking discovery, which waives answer under oath, is subject to exception for insufficiency for any cause whatsoever; and they are supported by good reason and by the greater weight of authority, as we think, in the conclusion that such an answer is subject to certain exceptions for insufficiency. But when examined those exceptions, for the most part, prove to be exceptions that would lie to the answer merely as a pleading. For instance, in the case of *National, etc.*

*Co.* v. *Interchangeable, etc. Co.,* supra (83 Fed. 26), strongly relied on by the plaintiff, in referring to the waiver in the bill of an answer under oath, the following is said in the opinion of the court: "It has nothing to do with the answer as a pleading, and the rule prevails that the defendant must answer fairly and fully to each and every material fact alleged in the bill. This fair and full answer should serve the purpose of eliminating many undisputed facts from the case. If facts alleged by complainants are admitted by the defendant in his answer, the necessity for consumption of time and expenditure of money in making proof thereof does not exist, and the court's attention is drawn to the debatable issues only. The power of the courts to require such an answer ought not to be abridged at all. * * " The same position, as to the right of the plaintiff to require a full answer, responding to all the material allegations of the bill, is taken by practically all of such authorities, and that exceptions for insufficiency will lie to an answer for its shortcomings in this regard. But this can be said of every answer as a pleading, which is defective in that respect. For there is a difference between the requirements in equity of the contents of an answer as a pleading from what is required of a pleading of a defendant at law. As said by Mr. Minor of an answer: "It is not enough that it contains a general denial of the matters charged, nor even of each specific matter severally." 4 Minor's Inst. (2d ed.), p. 1312. "The answer must respond to all the material allegations of the bill, either confessing and avoiding, or traversing *each one,* not *literally* only, but according to its substance." *Idem.* (The italics are Mr. Minor's). " * * a general traverse was never adequate in equity practice even considering the answer as a mere pleading, and there is no reason to suppose that waiving the oath has changed the law on this point." 1 Street's Fed. Eq. Pr., sec. 786. The answer, as a pleading, may traverse each and all of the material allega-

sooner.

tions of the bill directly, distinctly, categorically and un-
equivocally, but that is not enough, if the plaintiff insists
upon a full answer.   It must go further and state affirma-
tively the facts constituting the defense of the respondent,
whether that defense is in conflict, in whole or in part,
with the allegations of fact in the bill, or is in confession
and avoidance.   As Mr. Hogg says, in his valuable work on
Equity Pleading, in reference to an answer:   "Its real
purpose is to apprise the plaintiff of the extent and nature
of the defense offered to the bill, and so inflexible is this
principle that a defendant can avail himself of no matter
of defense not stated in the answer, even though it is estab-
lished by the evidence."   1 Hogg's Eq. Pr., sec. 397, p. 471.
See to the same effect, 1 Street's Fed. Eq. Pr., sec. 744, and
citation from Daniel's Ch. Pr.   A pleading of a defendant
at law often times does not do this.   It is for that reason
statutes have been enacted allowing the statement of the
grounds of defense to be required under certain circum--
stances in actions at law, in addition to the pleadings.   It
is true that under statute in Virginia the plaintiff may have
the cause set for hearing without any answer whatever, in
which case, by virtue of the statute, the bill is taken for
confessed.   Or, if the defendant answers, and answers
only a part of the allegations of the bill, if he denies knowl-
edge as to the facts not denied, it is sufficient, under the
practice in Virginia, to put such facts in issue.   1 Hogg's
Eq. Pr. sec. 404, p. 482.   And also, under the Virginia
practice, the defendant in his answer may neither admit
nor deny those matters of fact not within his own knowl-
edge and call for strict proof of them (*Idem,* sec. 403,
p. 480), which will put them in issue.   And, after decree,
where an answer is filed, however imperfect it may be to
put in issue the allegations of the bill, it will be treated as
a traverse of all of such allegations.   The decisions cited
bye defendants, t the point that an answer to a bill waiving

answer under oath constitutes a traverse of the allegations of the bill, go no farther than ·that holding. See *B. & O. Ry. Co.* v. *City of Wheeling,* 13 Gratt. (54 Va.) 62; *Jones* v. *Christian,* 86 Va. 1017, 11 S. E. 984; *Millhiser* v. *McKinley,* 98 Va. 207, 211, 35 S. E. 446. None of the foregoing considerations, however, touches upon the right of a plaintiff in all equity suits to insist upon and to compel an answer, and a full and complete answer, as a pleading, in accordance with the rules of the forum. 4 Minor's Inst. (2d ed.), p. 1316. And, although it is true that under section 3275 of the Code a defendant may be allowed, under certain restrictions, to file his answer at any time before final decree, that does not affect the right of the plaintiff, by the proper proceeding, to have the court compel him to answer sooner.

And there are other requirements of an answer as a pleading, besides those above mentioned, which, according to the rules of the forum, the plaintiff is entitled to insist upon. Among those are the following: The defense set up in the answer should be·a sufficient defense; and the plaintiff is entitled to insist upon an answer, not only according to the "knowledge" of the defendant, but also "as to his remembrance, information and belief." 1 Daniell's Ch. Pr. (5th ed.), t. p. 722; 4 Minor's Inst. (2d ed.), p. 1317. Exceptions will lie to an answer as a pleading, if deficient in any of these matters.

To the extent, therefore, that the authorities relied on by the plaintiff go in taking the position that an answer not under oath is not free from all exception for insufficiency, we consider them correct in their holding. And as some of the authorities cited by the defendants go to the extent of holding that an answer not under oath is free from all exception for insufficiency, and as that view is urged by defendants, we feel that we should say that we do not approve of that holding.

But we cannot assent to the correctness of the conclusion
of the authorities cited by the plaintiff, that the require-
ments of modern equity procedure as to affirmative state-
ments of defense in an answer, when considered merely as
a pleading, lead to the result of allowing a plaintiff to com-
pel a respondent to go beyond traversing each and all of
the material allegations of the bill and giving an affirma-
tive statement of facts constituting his own defense, and
compel him to also add a statement of facts not a part of
his defense, but a part of the plaintiff's case, and which the
plaintiff needs and seeks as *evidence* to support his case.

Doubtless, as said in 1 Street's Federal Eq. Pr., sec. 786:
"What should now go into an answer considered as a mere
pleading may well be very different from what would have
been necessary to put in it if there had never been anything
in the answer but matter of pleading. In the development
of the answer as a pleading, the principle of discovery has
exerted an influence that must constantly be taken into
account;" but this consideration falls short of establishing
the conclusion that without the aid of statute, or rule of
court, so providing, a fixed rule of procedure can be
changed so as to make a pleading not under oath serve the
function of supplying *evidence*.

In the case of *Sheppard* v. *Akers, supra* (1 Tenn. Ch.
326), the statute involved was as follows:

"The plaintiff may, in his bill, waive an answer from the
defendant under oath, in which case the answer will be
entitled to no more weight than the bill as evidence." (Acts
1855-6, ch. 108, 2 Laws of Tenn. sec. 4317).

The court in that case by the language of the decision
went to the broad extent of holding that no exception for
insufficiency will lie to an answer not under oath. But it
is apparent that the court had in mind that function, or
office, of an answer which serves the purpose of supplying
evidence. The opinion, after reviewing a number of au-

thorities concerning the practice of disallowing exceptions for insufficiency to an answer not under oath, says: "The reason for the practice is that the answer is not evidence. The courts have considered it inequitable to allow the complainant to sift the conscience of the defendant for admissions to be used against him, when the complainant has declined to allow him any of the benefits of the disclosure. A better reason, perhaps, is that the complainant has no right to call for a discovery, when he himself, by waiving the oath, has declared that he does not stand in need of it. The idea of sifting the conscience of a party without the instrumentality of an oath is, moreover, contrary to the very theory of chancery proceedings.   *   * "   See to the same effect *Smith* v. *Insurance Co. supra* (2 Tenn. Ch. 599), in which it is said: "No doubt exceptions will lie to the sufficiency of an answer as a pleading, as well as to its sufficiency as a discovery."   But the latter case, in addition to holding that no exception will lie to the sufficiency of an answer as a discovery, where the answer is not under oath, takes the view that an answer is nothing more than a discovery as to all matters of substance contained in its allegations beyond the traverse of the allegations of the bill, and that a defendant cannot be compelled to do more than traverse the allegation of the bill when answer under oath is waived.   As stated above, we are not disposed to go to that length in our holding.   We think that the plaintiff is entitled to insist that an answer shall go beyond the mere traverse of the allegations of the bill, to the extent of stating affirmatively the facts on which the defendant relies as a defense to the bill.   We do not think, however, that such statement in the answer after the traverse aforesaid, need go, or that the defendant can be compelled to go, beyond the allegations of the facts on which he relies, in an answer to a bill which waives answer under oath.

It should be also noted that the authorities relied on by

the plaintiff take the position that, because the admissions, which may be made in an unsworn answer, may be used by the plaintiff as evidence in his favor, it cannot be said that an unsworn answer is not evidence. The fallacy in such reasoning is apparent. Admissions of parties, made in the course of judicial proceedings are, it is true, in a certain sense admissible as evidence, but the ground on which they are so admissible is that they constitute a waiver of proof. 1 R. C. L., sec. 4, p. 469. Such admissions are, of course, made in mere pleadings. It is obvious, therefore, that the conclusion does not follow, because admissions may be *voluntarily* made in an unsworn answer, that a defendant may be *compelled* to make admissions and thus supply *evidence* in a cause by such an answer. And the reasoning under review overlooks the consideration that if the unsworn answer is in truth *evidence,* it would be so as a whole, and, insofar as the answer is responsive to the material allegations of the bill, not only would the admissions be evidence for the plaintiff, but its adverse responsive statements would necessarily be evidence also, and evidence against the plaintiff.

Of the authorities cited by the plaintiff the following should be further observed:

With respect to the federal decisions so cited, as pointed out in 1 Street's Fed. Eq. Pr. sec. 785, p. 475, the federal equity rule 40 declares that "the defendant must give discovery on any and every statement of the bill, though no particular interrogatories based on such statement are attached to the bill." Such rule, when read along with equity rule 41 aforesaid, would lead to the expectation that the decisions in the federal courts on the subject we have under consideration would be more favorable to the position of the plaintiff, than elsewhere, as in Virginia, where we have no such rule as federal equity rule 40, nor any statute to that effect.

But what is more dissuasive of the soundness of the decisions of the federal courts relied on by the plaintiff, is that they are merely circuit court cases, and .that in the latest decisions of the federal courts (which are among those cited by the defendants), the holding is to the contrary, namely: that under said federal equity rule 41, where a plaintiff in his bill waives an answer under oath, he cannot except to the answer for insufficiency.because it fails to make the discovery prayed for.

The case of *Tellinghast* v. *Chace, supra,* 121 Fed. 435, in particular, besides citing with approval many of the authorities relied on by the defendants, contains a review of all of the authorities relied on by the plaintiff in the cause before us, and of the same position which is taken by the latter, the court says: "But there is presented no decision of the Supreme Court, or of any circuit court of appeals, for this position; and it seems contrary to principle. The cases cited by Bates cannot be accepted as sufficient authority to overthrow so well established a principle as that a complainant who waives an oath cannot have discovery. * * * An allegation of fact may be put in issue by an unsworn answer, but an interrogatory propounds a question, and neither at common law nor in equity can an issue be framed upon a mere question."

The view is taken in 1 Street's Fed. Pr. sec. 737, that, "In the later federal decisions a distinction is drawn between the allegations of the bill and interrogatories attached to the bill." We do not so read such decisions. Certainly in the case of *McFarland* v. *State Savings Bank, supra,* 132 Fed. 399, the decision is placed upon the same ground as it is placed in the cases of *Huntington* v. *Saunders, supra,* and *Tellinghast* v. *Chace, supra,* namely, that to entitle one to discovery the answer to interrogatories, *as to a bill of .discovery,* must be under oath.

And while some of the federal cases, early as well as

latè, refer to the absence of interrogatories as one ground of denial of discovery, we have been unable to discover that the circumstance that discovery is prayed for by interrogatories, attached to the bill, rather than by interrogatories in the bill, is given any distinguishing weight by any of the federal decisions in their holding that discovery cannot be compelled by answer not under oath. For instance, in the case of *Excelsior Wooden Pipe Co., supra*, reported in 117 Fed. 140, and in 55 C. C. A. 157, it is said in the opinion:

"Upon the merits we are of opinion the judgment should be affirmed. The discovery feature of the bill may be disregarded—First, because the answer under oath is expressly waived in the bill; and secondly, because the bill propounds no interrogatories."

And in the case of *Victor G. Bloede Co* v. *Carter, supra*, 148 Fed. 127, the opinion says: "Rule 41 states in effect that so far as answers to interrogatories are waived, the answers thereto, although under oath, shall not be evidence in favor of the defendant, unless the case 'be set down for hearing on bill and answer only."

This apparently was to prevent a defendant from answering under oath, when an oath was not required, and claiming thereby the advantage of answering under oath. The defendants rely upon *Tellinghast* v. *Chace*, (C. C.) 121 Fed. 435; *McFarland* v. *State Savings Bank*, (C. C.) 132 Fed. 399. These cases hold precisely that the defendants may properly decline to answer the interrogatories seeking discovery attached to complainant's bill, when the complainant expressly waives an answer under oath. It is considered that they state the rule as it is and of right ought to be."

Of the case of *Colgate* v. *Compagnie Francaise, supra*, 23 Fed. 82, relied on by plaintiff, it should be noted that in its holding that a pure bill of discovery can be main-

tained against a corporation as sole defendant, which (of necessity) answered not under oath, it is not in accord with the rule in Virginia, where it has been expressly decided that a bill of discovery cannot be maintained in such case, for the reason "that no one is made a party defendant who can answer under oath." *Roanoke Street Ry. Co.* v. *Hicks, supra,* 96 Va. 510, 32 S. E. 295. It should be further noted that by the later decision of the same federal court (U. S. Cir. Ct. Dist. N. Y.), in the case of *Victor G. Bloede Co. V. Carter, supra,* 148 Fed. 127, it is said of the *Colgate Case* that "it might be cited as authority that a bill of discovery must be answered although the oath be waived." (But) "there is much later authority to the contrary effect."

In the case of *Slessinger* v. *Buckingham, supra,* 17 Fed. 454, cited by the plaintiff, the bill did not waive and the answer was under oath, so that the question under consideration was not involved. But the court in its opinion, discussing the advantages of said equity rule 41, says: "It would seem that a discovery by answer under oath may now be advantageously waived by the complainant, in at least the majority of cases." Which would seem to take the view that if answer under oath was waived, the right to compel discovery would be waived also.

With respect to the New Jersey case of *Hanley* v. *Nickle, supra,* 55 N. J. Eq. 563, 37, Atl. 738, (which it may be noted is the only authority cited by 14 Cyc. 315, also relied on by plaintiff), which is especially relied on by the plaintiff, an examination of that case discloses that the waiver of oath was by a cross-bill and the disclosures prayed for therein were, in truth, matters of fact, statements of which should have been contained in the original bill, therefore, while discussed in the opinion in that case, the question we have under review was not involved therein.

Further: In the later case in the same court (of New

Jersey) of *Daab* v. *N. Y., etc. R. R. Co. supra,* 70 N. J. Eq.
489, 62 Atl. 499 (cited by defendants), such court has taken
a position contrary to the *dictum* in the earlier case just
mentioned, and expressly limits the *Manley* v. *Mickle* case
to the role of laying down a permissive rule of practice
allowing a defendant to make voluntary admissions. The
latter case expressly holds that such admissions cannot be
compelled when answer under oath is waived in the bill.
In that case the bill sought the relief of accounting and
prayed for discovery by the defendant, in aid of that relief,
of certain accounts, as shown, as alleged, by the books and
papers of the latter.

The New Jersey statute on the subject in force when
both of the decisions next above mentioned were rendered
(as contained in the laws of New Jersey 1867 p. 166 and
1902 p. 517), is as follows:

"The complainant may, in any bill in chancery, pray that
the defendant answer without oath, in which case the an-
swer need not be sworn to, and the allegations and state-
ments therein, whether responsive or not, shall not be evi-
dence against the complainant, except on a motion to grant
or dissolve an injunction, on which motion the statements
and denials in an answer duly sworn to, shall have the
same effect as heretofore; and when an answer without
oath is so prayed, the complainant may annex to the bill in-
terrogatories, founded on statements in the bill, and the
same, or any part thereof, may be addressed to all or any of
the defendants, and each defendant to whom such inter-
rogatories are addressed, shall answer the same, under
oath, or affirmation, fully, directly and responsively,
confining the answer to the interrogatories proposed; and
such answers shall be annexed to the answer to the bill, be
filed therewith, and be liable to be excepted to, as a part of
the answer; and so far as responsive to such interrogato-
ries shall have the same effect as responsive allegations in

answers required to be sworn to; and any defendant omitting to answer any such interrogatories directly and fully may be compelled so to do, or the allegations in the bill upon which the interrogatory is founded shall be taken as admitted to be true, and a decree made thereon accordingly."

The New Jersey court, in the *Daab Case,* in its opinion says:

"The bill prays for an answer without oath. If the jurisdiction of this court in a case like this could be extended, because the complainant has a right to discovery, which I do not admit, such result would follow, as it seems to me, only in case discovery in the ancient sense of the term were sought. Discovery means production of evidence. When the answer is not under oath, the defendant's statements are not evidence in the cause against the complainant. They may be admissions, and as such evidence against the particular answering defendant who makes them. An answer in chancery originally had a dual capacity. It was a mere pleading to aid in defining the issues to be tried and also a means of obtaining evidence not otherwise procurable. Our statute (Laws 1867, p. 166), Chancery Act, 1902, sec. 19 (Laws 1902, p. 517), permitting the plaintiff to call for an answer without oath, gives the complainant the option to obtain from his adversary a pleading which has no force as evidence, except so far as the defendant may see fit to make admissions. This statute, however, expressly provides that the complainant, while calling for an answer without oath, may annex interrogatories to his bill to be answered under oath with the same effect as evidence 'as the responsive allegations in answers required to be sworn to.' The statute plainly permits the defendant to procure an answer which is a mere pleading, and also to force the defendant to make discovery under oath in regard to any parts of the case

concerning which he sees fit to call for such discovery. Notwithstanding this special provision for interrogatories to be answered under oath, the practice is established of permitting the complainant to submit interrogatories in his bill to be answered without oath, and this procedure is considered a mode of obtaining discovery. *Manley* v. *Nickle*, 55 N. J. Eq. 563, 37 Atl. 738 (1897). The last mentioned decision of the court of errors and appeals, however, in my opinion, lays down merely a rule of pleading. The complainant, according to the doctrine of the case, has a right to present to the defendant the opportunity of making admissions, not only in regard to the allegations of the bill, but also in regard to matter of evidence which will be dealt with on the trial, which admission, if made, may be useful to the complainant * * *. Under no theory, in my opinion, can the jurisdiction of this court to decree an account be sustained on the ground that the complainant has the right to invoke the aid of the court for discovery, when the complainant waives an answer under oath and submits no interrogatory to be answered under oath, but abandons altogether the use of the answer as a means of putting the defendant under oath in the cause in advance of the trial, and thereby elects to have the answer stand as a mere pleading."

Before coming directly to the consideration of the proper interpretation of the statute in Virginia, above quoted, we think the following general considerations should also be had in mind.

There is no controversy over the proposition that in the absence of statute, or rule of court, or express leave by order of court, answers in all suits in equity must be under oath, except the answers of corporations, infants, committees of persons of unsound mind, guardians *ad litem*, and, in England, persons entitled to the privilege of peerage, the Secretary of State for India and the Attorney General,

which need not be under oath, unless required by statute in
some statutory proceedings. 1 Daniell's Ch. Pr. (5th Am.
ed.), top pp. 735-8; 1 Hogg's Eq. Pr. sec. 158. And under
the practice in England, as laid down in 1 Daniell's Chy. Pr.
last cited, leave of court was required for a guardian
*ad litem,* or committee or person entitled to the privilege
of peerage to file an answer not under oath. The practice
also grew up in England of the putting in of answers by
others not under oath, or without oath and without signa-
ture, especially in amicable suits, where the plaintiff asked
therefor or consented thereto; but such answers could not
be received except under order of court first obtained.
1 Daniell's Ch. Pr. (5th Am. ed.), top pp. 736-8. And the
learned author last cited says in the text of the work last
quoted, at top pp. 737-8: —"If the answer is to be put in
without oath or signature, the consent of the party not ap-·
plying is requisite. It is usual for the plaintiff's solicitor
to require to see the draft or a copy of the proposed an-
swer, before applies or consents to the defendant's appli-
cation, in order that he may be satisfied that it is sufficient;
as no exception can be taken to an answer put in without
oath, or signature, or attestation of honor." Citing *Hill* v.
*Earl of Bute,* 2 Fowl. Ex. Pr. 10.

We find the last named case also referred to in *Sheppard*
v. *Akers, supra,* 1 Tenn. Ch. 326, as cited by 1 Hoffman's
Ch. Pr. 240, to sustain the statement of the text of the lat-
ter, that "the general rule is that exceptions cannot be taken
to an answer without oath, or upon protestations of honor."
The report of the case referred to in 2 Fowl. Ex. Pr. 10 is
very brief and somewhat obscure. After stating the hold-
ing in another case (*Strudwick* v. *Pargiter,* Bunb. 338)
to be that, "Exceptions cannot be taken to the answer of
an infant, because he is not bound by it, but may amend
it when he becomes of age," it continues, and contains
only the following report of the *Hill* v. *Earl Bute Case*

(which will be here quoted in full as this report can be found in only one ·library in this country, as we are informed—the Harvard Law Library—to whose librarian we are indebted for access to it), as follows:

"Nor to an answer put in without oath, as appears by the following case. Mr. *Richards* showed exceptions for cause against an order for dissolving the injunction. Mr. *Mitford*, for defendant, opposed the cause shewn, for that the answer was taken without protestation of honor, by consent of the plaintiff, and that it was the established practice of the court of chancery, that you cannot take exceptions to an answer put in without oath. *Per curiam*, these answers are considered as matters of form only; and had .this been the first case that had occurred of the kind, we should have ruled, that no exceptions can be taken in such a case. *Hill* v. *Earl of Bute, 9th May, 1786, in Scac.*"

We see then that the point decided in that case was not that an answer put in without protestation of honor, or without oath, was for those reasons free from exception for insufficiency as a pleading, interposed for the purpose of compelling a fuller answer, but that such an answer having been filed by consent of the plaintiff (after inspection of it, doubtless, in accordance with the practice referred to in Daniell's Ch. Pr. above quoted) no exceptions could be taken by the latter to the contents of the answer. A very different holding. On the other hand, insofar as such case holds, in effect, that such an answer, although not under oath, when once put in in that form (the defendant thus accepting the waiver of answer under oath by the plaintiff) might be read as evidence, that touches a question of practice which, as we shall presently advert to, was at one time the subject of a diversity of opinion in this country, and that question was settled in this State, as we shall presently see, by the statute above quoted on which appellant relies in the cause before us. But that, in turn, is a differ-

ent question from that of the right of a plaintiff to compel a defendant to file an answer which shall perform the function of supplying evidence, when an answer under oath is waived by the plaintiff.

See Am. note to 1 Daniell's Ch. Pr. (5th ed.), top p. 760 and *Ohlman* v. *Arnholt, etc., supra*, 41 Fed. 369, for discussion of whether the lack of oath to answers of infants, etc., is the fundamental reason why discovery cannot be compelled of certain defendants. Whatever may be the true position on the latter subject, however, it is not vital to the decision of the question we have before us.

See also note to 5 Am. & Eng. Dec. in Equity, page 463 *et seq.* for a general treatment of the subject of waiver of oath to bill for discovery and for a very extensive citation of authorities.

In some of the jurisdictions of the United States, prior to any standing rule of court, or statute, on the subject, a practice grew up similar to that above mentioned as obtaining in England. Under such practice the question most often considered by the courts was what was the force and effect of an answer not under oath put in by consent of the plaintiff. Story's Eq. (10th ed.), secs. 874, 875-a. Mr. Minor takes the view that it should be held, on principle, that "the issue being joined by means of the answer, the *law of the forum* would exact a like measure of proof in opposition to the answer, as if it had been made under oath; and" (says Mr. Minor "of that opinion was Ld. Eldon, in *Curling* v. *Thompson,* 19 Ves. 630-31. But" (he adds) "see an elaborate *dictum* to the contrary in *Union Bank* v. *Geary,* 5 Pet. 111-12, 8 L. Ed. 60, and also *Smith* v. *Clark,* 4 Paige (N. Y.) 368; and a further *dictum* to the contrary is found from Judge Moncure, in *Balt. & O. R. R. Co.* v. *Wheeling,* 13 Grat. (54 Va.) 62." 4 Minor's Inst. (2nd ed.), p. 1327. And see *Thornton* v. *Gordon,* 2 Rob. 719, 725-7, cited by Mr. Minor at p. 1326. It would unduly pro-

96

long this opinion to refer to the decisions on this branch of the subject in other States, as they are very numerous. But, as pointed out in the note to sec. 874 of Story's Eq. Pl. above cited, the practice above referred to of allowing the defendant to answer not under oath by consent of the plaintiff was not attended with any power to *compel* the defendant to so answer and thus make discovery. On the contrary as pointed out in such note—"It is well settled that a waiver in the bill of an answer under oath is of no effect, if not accepted by the defendant, and does not deprive an answer under oath of its ordinary effect as evidence," citing numerous authorities. This, of course, has reference to such practice prior to any standing rule of court or statute governing the subject. Such was the settled rule of practice in Virginia prior to any statute on the subject. *Fant* v. *Miller,* 17 Grat. (58 Va.) 187; *Jones* v. *Abraham,* 75 Va. 466.

We think, therefore, that the United States Circuit Court of Appeals was correct, in part, at least, in its holding above quoted, in the case of *Victor G. Bloede Co.* v. *Carter, supra* (148 Fed. 127), that the object of the adoption of the Federal Equity Rule 41 aforesaid "was to prevent a defendant from answering under oath when an oath was not required and claiming thereby the advantage of answering under oath." That is to say, one of its objects, at least, was to alter the practice, established as aforesaid, by the decisions prior to such rule, that the waiver in the bill of an answer under oath was of no effect if not accepted by the defendant. Doubtless, another object of such rule was to settle the question adverted to by Judge Story and by Mr. Minor, as above noted, as to the force and effect as evidence of an answer *not* sworn to, "supposing the oath to have been dispensed with" (to use the language of Mr. Minor), to which the latter refers as one of the "principal questions" which had been raised. 4 Minor's Inst. (2nd

ed.) pp. 1326-7; Story's Eq. Pl. *supra,* sec. 875a.   And we are of opinion that these were the objects of the enactment of the Virginia statute in question, and not any purpose to change the established rule of equity procedure which required, and still requires, as we think, an answer under oath as inseparable from the right to compel a discovery by answer in a suit in equity.

The statute does not, indeed, by its terms purport to provide under what character of bill discovery may be had, or to change or affect the long established rule in courts of equity that bills praying for discovery must require answer under oath, and that an answer, to perform that function of it which supplies *evidence,* must be under oath. The statute, by its language, deals merely with the force and effect of the answer as evidence, in suits in equity, when the plaintiff shall in his bill waive answer under oath,. or shall only require an answer under oath as to certain specified interrogatories.   It expressly contemplates a continuance of the practice of bills in equity requiring "an answer under oath with regard to certain specified interrogatories," (*i. e.,* a continuance of the long established procedure by which alone discovery could be compelled), in which case it provides, in effect, that such parts of an answer as shall be directly responsive to such interrogatories, shall have the same force and effect as evidence as aforetime.   If it meant to provide that discovery could·be had without "an answer under oath with regard to certain specified interrogatories," it did a vain thing in making any mention of that subject, since it is obvious that no practitioner would ever place upon his client the *onus* of obtaining a discovery by sworn answer, when he could have the same relief by praying for an answer not under oath, which would be unattended with the burden aforesaid incident to an answer under oath.

Our conclusion, therefore, is that the plaintiff in the cause before us, having waived answer under oath, was not entitled to compel the discovery asked for in the bill.

Only one other point is urged in argument by the plaintiff, which is not assigned as error in the petition, but, as no objection is made by defendants to its consideration, we will pass upon it. The plaintiff takes the further position that

3. Having answered, the defendant must answer fully, and cannot avail of the waiver of oath.

The following authorities are cited to sustain this proposition, namely: 14 Cyc. 317, 319; Hogg's Eq. Pr., p. 238; *Manley* v. *Mickle, supra,* 55 N. J. Eq. 563, 37 Atl. 738, and 4 Minor (3rd ed.) 1425.

There is no doubt that "the strict and general rule" is, as stated by Mr. Minor, in the citation from that eminent author relied on by plaintiff, that "the defendant who has occasion to protect himself against discovery, must resort to a plea or demurrer, for if he answers at all, he must *in general* answer fully　*　*." And this same *general rule* is laid down in the other authorities cited and relied on by plaintiff on this point.

But even according to the strict rules of pleading, it is laid down in 1 Daniell's Chy. Pr. (5th ed.), top p. 718,— "*　*　the objection" (to discovery) "arising from want of materiality is one that the defendant has always been allowed to raise by answer." And on top page 720 of the same work it is expressly stated that, where such an objection is concerned, it constitutes an exception to the general rule "that when a party answers he is bound to answer fully." As pointed out in such work (top pp. 720-1) the rule last quoted "*　*　is applicable in all cases where the defense intended to be set up extends to the entire subject of the suit　*　*　*." Again: this author says in the same work (top p. 582): "If a defendant objects to a particular part of the discovery, and the grounds upon which he may demur appear clearly on the face of the bill, and the defendant does not demur to the discovery, but, answering to the rest

of the bill, declines answering to so much, the court will not compel him to make the discovery; * *." See, for same statement, *Idem,* top p. 722. Such is the case before us. The waiver of answer under oath, the objection to the discovery, appeared clearly on the face of the bill, and the defendants might have demurred to the discovery prayed for in the bill. Further: it is stated in 1 Hogg's Eq. Pr. sec. 160: "If the ground of objection to making discovery does *not* appear on the face of the bill, the defendant must claim exemption from making discovery by plea *or answer.*" (Italics supplied). And in *Manley* v. *Mickle, supra,* the statement relied on by plaintiff that complainants "having answered, they must answer in full," is qualified by the remainder of the sentence, "unless their objection to the particular interrogatory is well taken." Moreover, the decisions disclose that the practice is very general for a defendant, after having answered fully to all the material allegations of the bill, except the discovery he objects to, to decline to answer further. And the plaintiff thereupon, as in the cause before us, excepts to the answer for insufficiency because of its failure to make discovery as prayed for by the plaintiff. Such exception then puts in issue and presents to the court the question whether the defendant can be compelled to answer further and make the discovery. This was done in the case of *McFarland* v. *State Savings Bank, supra,* 132 Fed. 399. The defendants there answered the bill, but declined to answer the interrogatories. The court said: "The defendants having answered the principle allegations of the bill under oath, yet having declined to answer the interrogatories propounded, there is presented for decision the question whether the complainant having expressly waived an answer under oath, defendants may properly decline to answer the interrogatories seeking discovery * *." Indeed, in practically all, if not all, of the cases cited, both for the plaintiff and defendant, in the cause before us, that was the practice followed.

We think, therefore, that certainly in the cause before us there is no merit in the position under consideration. The defendants having answered fully all of the allegations of the bill, except the interrogatory, they could properly refrain from answering further, as we have above seen; and, in a cause where the plaintiff himself has elected to and has followed such procedure, we can see no objection to the question being raised, whether they could be compelled to answer further, by the exceptions which were taken by the plaintiff to their answer, instead of its being raised by the defendants by demurrer or by plea.

For the foregoing reasons we find no error in the order complained of and it will be affirmed.

*Affirmed.*

BURKS, J., concurs in the results.